688 A.2d 1109

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RUSSELL J. DORKO, JR., DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 28, 1997—Decided February 27, 1997.

Before Judges DREIER, NEWMAN and VILLANUEVA.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Barbara A. Hedeen*, Assistant Public Defender, of counsel and on the brief).

*Peter Verniero*, Attorney General, attorney for respondent (*Linda K. Danielson*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant appeals from a conviction of second-degree eluding, *N.J.S.A.* 2C:29–2b. He was sentenced to an extended term of twelve years with a six-year parole disqualifier. Since the charges also included defendant's alleged commission of seven motor vehicle offenses, the judge adjudicated these offenses following the jury's verdict and imposed the appropriate motor vehicle penalties, after merging the reckless driving conviction into the eluding conviction.

Defendant was observed shortly after 3:00 a.m. in downtown Somerville making an illegal right turn at a red light. He was stopped by a police officer, who asked defendant for his license, registration and insurance certificate, and inquired whether the car belonged to defendant. Defendant stated that the car belonged to a friend and then sped away. He was chased by the officer through the streets of Somerville. The officer testified that defendant went through five stop signs without stopping, although he did slow down at each, and also proceeded through a red light without slowing down at all. Defendant exceeded the speed limit by some twenty miles an hour on most streets, and then when he reached East Main Street and headed toward Bound Brook, he operated his vehicle at a speed of up to sixty-five miles per hour. He finally turned into the Bound Brook driveway of the owner of the vehicle and then ran away down a railroad track. The officer attempted to pursue, but lost defendant. Defendant was not arrested until months later when his location in Florida was discovered by the police.

Defendant raises four points on this appeal, all of which have some merit.

POINT I

THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE DEFINITION OF INJURY EVEN THOUGH THE RISK OF INJURY WAS AN ESSENTIAL ELEMENT OF THE OFFENSE. (Not raised below).

POINT II

BECAUSE THE JURY WAS PERMITTED TO INFER THAT DEFENDANT'S CONDUCT CREATED "A RISK OF DEATH OR INJURY" IF IT DETERMINED THAT HIS CONDUCT VIOLATED ANY OF THE MOTOR VEHICLE OFFENSES SET FORTH IN CHAPTER 4 OF TITLE 39, AND SUCH RISK IS AN ELEMENT OF THE SECOND-DEGREE CRIME OF ELUDING, THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO DEFINE AND DELIMIT THE UNDERLYING MOTOR VEHICLE OFFENSES. (Not Raised Below).

POINT III

DEFENDANT'S MOTION FOR A NEW TRIAL SHOULD HAVE BEEN GRANTED BECAUSE DEFENDANT'S CONDUCT DID NOT CREATE A RISK OF DEATH OR INJURY TO ANY PERSON.

POINT IV

THE TRIAL COURT'S IMPOSITION OF AN EXTENDED TERM OF TWELVE YEARS IN PRISON WITH SIX YEARS OF PAROLE INELIGIBILITY IS PLAINLY EXCESSIVE.

## I

Defendant first claims that the trial judge failed to instruct the jury concerning the definition of "injury," when such a definition was an element of this offense. The statute reads in material part:

Any person, while operating a motor vehicle on any street or highway in this State . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop commits a crime of the third degree; *except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person.* For purposes of this subsection, there shall be a permissive inference that the flight or attempt to elude creates a risk of death or injury to any person if the person's conduct involves a violation of chapter 4 of Title 39 . . . .

[*N.J.S.A.* 2C:29-2b (emphasis added).].

The jury was never told what the word "injury" meant in the phrase "death or injury." This created a significant problem in that the jury could have speculated concerning the extent of an

injury that would satisfy the statute, or even whether property damage was sufficient to turn the crime from one of the third-degree into one of the second-degree. The statute provides no definition. We could engraft upon this statute the definition of "serious bodily injury" set forth in *N.J.S.A.* 2C:11–1 because the Legislature expressed the standard in *N.J.S.A.* 2C:29–2b as *"death* or injury to the person" (emphasis added), and therefore may have intended that only the risk of serious injury could satisfy the statute. But the commentary in Cannel, *New Jersey Criminal Code Annotated,* comment 4 on *N.J.S.A.* 2C:29–2 (1996–97), leads us to a different conclusion. The author states:

> Where injury or death of another person is caused while a person is fleeing in a motor vehicle as proscribed by subsection b of this section, the injury is treated as a strict liability aggravated assault under [*N.J.S.A.*] 2C:12–1b(6) or (7) and the death as a strict liability manslaughter under [*N.J.S.A.*] 2C:11–4b(3).

 *N.J.S.A.* 2C:12–1b(6), which incorporates the eluding offense by reference, answers the question by using the words "bodily injury" when describing aggravated assault based upon *N.J.S.A.* 2C:29–2b as a crime of the second-degree where the action actually causes "bodily injury," as opposed to the mere "risk of ... injury" language in this case. The Legislature therefore most probably intended the same element to be proven for the creation of the risk as it directed for causing the actual injury. The jury, therefore, should have been charged with the "bodily injury" definition of *N.J.S.A.* 2C:11–1a, *i.e.,* "physical pain, illness or any impairment of physical condition." The lack of this instruction was reversible error, since the injury was an element of the offense and the jury was left without an explanatory charge.

## II

 The jury was properly instructed concerning the permissible inference stated in the statute, namely that a violation of chapter 4 of Title 39 permits an inference that there was a risk of

death or injury.[1] With regard to the alleged motor vehicle violations, the judge stated:

> Now, you may infer such a risk if the defendant's conduct in fleeing or in attempting to elude the officer involved a violation of the motor vehicle laws of this state. It is alleged in this case that the defendant's conduct involved a violation of the following motor vehicle laws: failure to stop at stop signs; speeding; running a red light; making a right turn on red; driving while suspended; reckless driving; and failure to yield to an emergency vehicle. However, you are never required or compelled to draw this inference.
>
> As I've already explained, it is your exclusive province to determine whether the facts and circumstances shown by the evidence support any inference, and you are always free to accept or reject any inference if you wish. As I started to explain to you before, it is, you do not have to decide the motor vehicle—the guilt or innocence of the defendant on the motor vehicle summonses. Those summonses ... will be in the jury room with you [and] will be handled by an appropriate court at a later time.

The judge, however, declined to charge the elements of the governing motor vehicle offenses. We determine that the failure of the court to charge the elements of the applicable motor vehicle statutes was additional reversible error.

Five of the seven offenses were defendant's running of a stop sign. The statute, *N.J.S.A.* 39:4–144, provides that a driver must stop at a stop sign "and shall proceed only after yielding the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard." The violation can be either the failure to stop, or after stopping (or not), proceeding into the intersection when there is oncoming traffic, or both aspects of the offense. While the mere failure to stop would warrant a motor vehicle conviction and thus could raise the inference in the eluding statute, if the instructions had been given concerning the statute, defendant could properly have argued, or the jury could on its own have determined, that if defendant merely failed to stop but put no

---

[1] The inference could be rebutted, and may have been here, by a showing that there was no person within any zone of danger susceptible to such death or injury, but this looks to defendant's third point, discussed *infra*. Also, one of the offenses noted by the judge, driving while suspended, has no element of danger to a third party; and another, making a right turn on a red light, occurred before the eluding conduct. These offenses should not have been included in the charge.

one in danger (because there was, in fact, no traffic coming from either direction), then the jury should not make the inference that defendant created the danger of death or injury. It would be only if he violated the second portion of the statute that such an inference should be made by the jury. Since the statute was not charged, the jury was deprived of the opportunity to make this distinction.

Also, we should not assume that a jury knows the difference between reckless driving and careless driving or the elements of each offense. Reckless driving requires a "willful or wanton disregard of the rights or safety of others...." *N.J.S.A.* 39:4–96. Careless driving requires driving "carelessly, or without due caution and circumspection...." *N.J.S.A.* 39:4–97. But both offenses require that the driving be "in a manner so as to endanger or be likely to endanger, a person *or property...."* *N.J.S.A.* 39:4–96, 39:4–97 (emphasis added). The jury may have found that defendant's actions constituted recklessness, but merely by endangering property, since he was driving at 3:00 a.m. with no people in the area. The eluding offense requires the "risk of death or injury to any person." *N.J.S.A.* 2C:29–2b. The risk of property damage is not included. Thus, without a definition of reckless driving or even the lesser-included careless driving, the jury would not have known that there would be a distinction between personal injury and property damage in these offenses. Again, the failure to explain the elements of these motor vehicle offenses was reversible error.

## III

■ Defendant's third point raises the issue that there was no showing of any person in the area who was endangered. Consequently, defendant claims, his conduct did not create a risk of death or injury to any person. This was a proper argument for defendant, but the jury was not charged that it must find that some person or persons were actually endangered by plaintiff's conduct. If the statutory inference cannot be made, then the

State would be required to prove affirmatively that there was at least one person put at risk within the zone of danger created by defendant's conduct, because the statute clearly requires that defendant be shown to have "create[d] a risk of death or injury to any person." *N.J.S.A.* 2C:29–2b. The statutory inference is provided to avoid the necessity for such proof, but, as noted, the court must give the jury proper guidance to invoke the inference.

We cannot read into the statute hypothetical persons who might have been in the area. We thus draw a distinction between a case where a defendant runs stop signs and red lights and speeds, all through a heavily-traveled area, thus clearly fulfilling the element of the statute of putting persons in danger, and a case (as here) where a defendant commits the same offenses at 3:00 a.m. on deserted streets. While there is no requirement of producing the actual person by name, permitting a second-degree conviction without proof of some person endangered or providing a foundation for the statutory inference would mean that there would never be a case where there would be a third-degree conviction. If one could always hypothecate that some person might be in the area, then every violation would be one of the second-degree. Since this is a criminal statute, it should be strictly construed. *State v. Valentin*, 105 *N.J.* 14, 17, 519 *A.*2d 322 (1987).

Because we have found substantial grounds for reversal, we need not treat the issue of the extended term with the maximum parole disqualifier imposed on defendant.

All of the issues upon which we have reversed defendant's conviction bear upon the difference between the second- and third-degree offenses. There is no question that the jury properly found defendant guilty of third-degree eluding. We therefore remand this matter either for defendant to be resentenced for third-degree eluding or for a new trial on second-degree eluding. Reversed and remanded for further proceedings.