712 A.2d 1270 (1998)
313 N.J. Super. 435
STATE of New Jersey, Plaintiff-Respondent,
v.
Wayne WALLACE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 3, 1997.
Decided July 2, 1998.
*1271 Ivelisse Torres, Public Defender, for defendant-appellant (Philip V. Lago, Designated Counsel, on the brief).
Ronald S. Fava, Passaic County Prosecutor, for plaintiff-respondent (Robert H. Corrado, Assistant Prosecutor, on the brief).
Before Judges MUIR, Jr., KESTIN and STEINBERG.
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant appeals from his conviction for second degree eluding a police officer. He was also convicted of unlawfully possessing a handgun (third degree), possessing hollow nose bullets (fourth degree), and disorderly persons resisting arrest, as well as various motor vehicle statute violations, including careless driving. All charges, criminal and motor vehicle, had been tried to a jury.
Defendant also appeals from the sentence for the criminal convictions and the disorderly persons offense, an aggregate eight-year term consisting of concurrent sentences, respectively, of eight years, four years, eighteen months, and six months. Appropriate fines, assessments and fees were also ordered.
On appeal, defendant raises the following issues:
POINT I THE CONVICTION FOR RESISTING ARREST SHOULD HAVE BEEN MERGED WITH THE CONVICTION FOR ELUDING A POLICE OFFICER.
POINT II THE SENTENCE IMPOSED BY THE COURT IS EXCESSIVE.
POINT III THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON THE DEFINITION OF INJURY EVEN THOUGH THE RISK OF INJURY WAS AN ESSENTIAL ELEMENT OF SECOND DEGREE ELUDING. (NOT RAISED BELOW)
POINT IV BECAUSE THE JURY WAS PERMITTED TO INFER THAT DEFENDANT'S CONDUCT CREATED "A RISK OF DEATH OR INJURY" IF IT DETERMINED THAT HIS CONDUCT VIOLATED A MOTOR VEHICLE LAW, AND SUCH RISK IS AN ELEMENT OF SECOND-DEGREE ELUDING, THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO DELIMIT THE UNDERLYING MOTOR VEHICLE OFFENSES. (NOT RAISED BELOW).
POINT V DEFENDANT'S MOTION FOR ACQUITTAL ON THE SECOND-DEGREE ELUDING CHARGE SHOULD HAVE BEEN GRANTED BECAUSE DEFENDANT'S CONDUCT DID NOT CREATE A RISK OF *1272 DEATH OR INJURY TO ANY PERSON.
At about 10:45 p.m. on October 15, 1994, Paterson police officers Brian DeProspo and Orlando Robinson were on routine patrol in a marked police vehicle. Officer Robinson was driving.
Officer DeProspo testified at trial. In response to a radio dispatch regarding a blue Honda driven by a black male, the officers proceeded to the vicinity of East 23rd Street. While travelling south, they passed a blue Honda proceeding north on East 23rd Street. The officers turned their vehicle around and activated the lights and siren. They attempted to stop the Honda, but it accelerated. It circled the block twice, travelling erratically, in an apparent effort to evade the police vehicle.
DeProspo testified that he and his partner pursued the Honda for about a mile, covering about thirteen or fourteen city blocks. During the course of the pursuit, according to the detail of DeProspo's testimony, the driver of the Honda, later identified as defendant, proceeded through stop signs six times, sometimes slowing down and sometimes not. At one time, he drove on the left of the roadway; at another, he drove the wrong way on a one-way street. The vehicles traveled no faster than 30 miles per hour throughout the chase.
Eventually, the path of defendant's vehicle was blocked and he was apprehended. The Honda was stopped at the intersection of Broadway and 23rd Street where, according to DeProspo, defendant "jumps out, leaves the door open and attempts to run." The police officers left their vehicle and "immediately grabbed him," placing him under arrest.
During the chase, defendant had thrown an object from his car, which landed in front of a yellow house. After the chase ended, the officers returned to the particular location and recovered a .38 caliber handgun loaded with hollow nose bullets.
In the circumstances established, the conviction for disorderly persons resisting arrest should have been merged with the conviction for second degree eluding. All of the elements of the lesser offense are contained in the greater. N.J.S.A. 2C:1-8a(1); State v. Johnson, 203 N.J.Super. 127, 134-35, 495 A.2d 1367 (App.Div.), certif. denied, 102 N.J. 312, 508 A.2d 195 (1985) ("N.J.S.A. 2C:1-8[a(1) ] ... provides that a defendant may not be convicted of two offenses if one is a lesser included offense of the other."). Moreover, the proofs established no separate crime as a matter of fact. Defendant was arrested immediately upon the conclusion of the vehicular chase as he "attempted" to run from his automobile. The chase was the factual predicate of the eluding conviction. At its conclusion, defendant had no opportunity to engage in any separate resistive conduct and, therefore, cannot be treated as if he had committed an additional, distinct crime apart from second degree eluding.
Based on similar reasoning, we conclude that the conviction for careless driving should also have been merged with the conviction for second degree eluding. Cf. State v. Dorko, 298 N.J.Super. 54, 56, 688 A.2d 1109 (App.Div.), certif. denied, 150 N.J. 28, 695 A.2d 670 (1997) (reckless driving conviction merged into eluding conviction). N.J.S.A. 39:4-97 defines the motor vehicle offense as "driv[ing] a vehicle on a highway[*] carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property[.]" Manifestly, every significant element of this offense is embodied in second degree eluding.
No other issue raised with respect to the sentence has merit. R. 2:11-3(e)(2). Except for the absence of the necessary mergers, we regard every aspect of the sentences imposed herein to have been well within the trial judge's discretion. We remand for the entry of an amended judgment of conviction to reflect the required mergers. On remand, the trial court may consider whether the last sentence of the first paragraph of N.J.S.A. 2C:29-2b is a mandatory provision requiring the suspension of defendant's driving privileges for a period, see State v. Mercadante, 299 N.J.Super. 522, 528-29, 691 A.2d 819 *1273 (App.Div.), certif. denied, 150 N.J. 26, 695 A.2d 668 (1997) ("An illegal sentence is correctable at any time, even after the sentence has begun."), and whether, in the circumstances, it is appropriate to apply that provision.
The remaining issues defendant raises bear upon his conviction for second degree eluding, and implicate the reasoning in Dorko, supra. In his first argument in this regard, defendant contends that his conviction for second degree eluding must be reversed because the "risk of death or injury to any person" is an essential element of the crime as established by N.J.S.A. 2C:29-2b, and the trial judge failed to instruct the jury on the definition of "injury." Defendant cites Dorko as authority for the proposition that a conviction for second degree eluding must be reversed when such an instruction was not given. We agree with defendant in his reading of Dorko, but we respectfully disagree with our brethren therein that an instruction defining "injury" is required.
It is clear from the very terms of N.J.S.A. 2C:29-2b that the Legislature intended to include within the ambit of conduct constituting second degree eluding the operation of a motor vehicle or vessel, during flight from the police, in such a manner as to create a risk of death or any kind of injury to any person. The statutory phrase "injury to any person" is clear and all-inclusive. If there were any reason to discern that the Legislature intended to include some types of risked injury as elements of second degree eluding and exclude others it would, of course, be necessary for a jury to be clearly instructed as to which types were covered and which were not. But with injury risks of all types included, there is no more need to define the term "injury" than there is to define the term "death" in this context. See State v. Worlock, 117 N.J. 596, 612-13, 569 A.2d 1314 (1990) (No merit in argument that court failed to define "wrong" for jury: "an instruction is necessary only if the distinction [between legal wrong and moral wrong] is critical to the facts on which a ... defense" or an element of the crime is based.); State v. Johnson, 309 N.J.Super. 237, 264-65, 706 A.2d 1160 (App.Div.1998) (Response to jury request for a definition of "safe place" as used in kidnapping statute was proper, where the supplemental instruction stated it was "a factual determination for the jury to make."); State v. Scher, 278 N.J.Super. 249, 270-71, 650 A.2d 1012 (App.Div.1994), certif. denied, 140 N.J. 276, 658 A.2d 299 (1995) (Conviction for reckless manslaughter upheld where jury was told to rely on its "good common sense" and its "understanding of the English language" concerning the term "casual drinking" as a factor in determining whether defendant's conduct was reckless); State v. McClary, 252 N.J.Super. 222, 229, 599 A.2d 600 (App.Div.1991), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992) (Not necessary to define the word "force" in jury charge on robbery); State v. Rombolo, 91 N.J.L. 560, 563, 103 A. 203 (E. & A.1918) ("[A] trial judge ... is not required to give the jury definitions or synonyms of common English words used in a statute in their ordinary meaning."). See also State v. Cooper, 151 N.J. 326, 385, 700 A.2d 306 (1997) (It was error in penalty phase of trial of capital offense not to define the term "purpose," an element distinguishing one aggravating factor from another since "courts must define terms for the jury" even though "commonsensical" where they are central to any essential, discriminating finding a jury is required to make.); State v. Alexander, 136 N.J. 563, 571-73, 643 A.2d 996 (1994) (Court must explain even statutory terms with common, well-understood meanings, such as "leader," or "drug kingpin," when their "intended scope of application" is in question and when "clarification is essential to ensure that the jury will fully understand and actually find those elements in determining ... guilt."); State v. Kimbrough, 109 N.J.Super. 57, 64, 262 A.2d 232 (App.Div.1970) (Where, in a prosecution for receiving a stolen automobile, defendants alleged they were passengers in the car, the court erred in failing to instruct on the qualities of and distinctions between "actual physical possession" and "constructive possession" to assist the jury in applying "the statutory inference of guilty knowledge.") Accordingly, we conclude that there was no error in the trial court's charge to the jury in this regard, which did not define "injury."
*1274 Defendant's next argument based on Dorko concerns the "permissive inference" established in N.J.S.A. 2C:29-2b "that the flight or attempt to elude creates a risk of death or injury to any person" if the conduct alleged "involves a [motor vehicle] violation." The premise of defendant's argument in this regard, that the trial court "failed to delimit the underlying motor vehicle offenses," is not supported by the record. That omission was a fundamental flaw in the trial in Dorko, but this case is free of any such defect. Here, unlike in Dorko, the motor vehicle violations were before the jury for determination as well as the criminal charges, and the trial judge carefully charged the elements of each alleged motor vehicle offense which, in addition to being found by the jury, might also lead to the "permissive inference" established in N.J.S.A. 2C:29-2b.
In a related vein, defendant's last argument based on Dorko is that there was no proof of any person in the vicinity of the chase endangered by defendant's conduct. As observed in Dorko:
If the statutory inference cannot be made, then the State would be required to prove affirmatively that there was at least one person put at risk within the zone of danger created by defendant's conduct, because the statute clearly requires that defendant be shown to have "create[d] a risk of death or injury to any person." N.J.S.A. 2C:29-2b. The statutory inference is provided to avoid the necessity for such proof, but, as noted, the court must give the jury proper guidance to invoke the inference.

[Dorko, supra, 298 N.J.Super. at 60-61, 688 A.2d 1109.]
Although we also disagree with the underlying premise of this observation, we have concluded that the jury in this trial was properly guided in all respects given a predicate in the proofs for application of the statutory inference.
Further, by way of factual distinction between this case and Dorko, we note the observation in Dorko concerning the circumstances therein:
We cannot read into the statute hypothetical persons who might have been in the area. We thus draw a distinction between a case where a defendant runs stop signs and red lights and speeds, all through a heavily-traveled area, thus clearly fulfilling the element of the statute of putting persons in danger, and a case (as here) where a defendant commits the same offenses at 3:00 a.m. on deserted streets.

[Id. at 61, 688 A.2d 1109.]
It seems rather obvious that a motor vehicle pursuit through the city streets of Paterson in a residential/commercial area at 10:45 p.m. creates a risk of death or injury.
The conviction under appeal is affirmed. The matter is remanded for resentencing to reflect the required mergers. In all other respects the sentences are affirmed.
NOTES
[*] Defined in N.J.S.A. 39:1-1 to include every public roadway used for vehicular travel.