730 A.2d 839

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. WAYNE WALLACE, DEFENDANT–APPELLANT.

Argued May 4, 1999—Decided June 22, 1999.

*Ruth Bove Carlucci,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney).

*Robert H. Corrado,* Assistant Prosecutor, argued the cause for respondent (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*Janet Flanagan,* argued the cause for *amicus curiae,* Attorney General of New Jersey (*Peter Verniero,* Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

Under the New Jersey Code of Criminal Justice (Code), a person commits the crime of second-degree eluding, if while operating a motor vehicle on any street or highway in this State, the operator "knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle ... to a full stop ... [and] the flight or attempt to elude creates a risk of death or injury to any person." *N.J.S.A.* 2C:29–2b. This appeal requires us to resolve a conflict between panels in the Appellate Division over whether the term "injury" in *N.J.S.A.* 2C:29–2b should be defined when instructing a jury in a second-degree eluding case. We hold that the term must be defined.

## I

On October 15, 1994, at approximately 10:45 p.m., Paterson police officers Brian DeProspo and Orlando Robinson were in uniform and on routine patrol in a marked police vehicle. Based on information received from Police Officer Diaz, the police radio dispatcher, Officers DeProposo and Robinson proceeded to the vicinity of East 23rd Street in Paterson. For reasons not disclosed in the trial record, the radio dispatcher directed the officers' attention to a blue Honda driven by an African–American male, later identified as defendant, Wayne Wallace. While the officers were proceeding northerly on East 23rd Street, they observed a blue Honda traveling in the opposite direction. The officers turned their patrol car around and activated their lights

and siren in an unsuccessful attempt to stop defendant's Honda. Instead of stopping, defendant attempted to evade the officers by circling the block twice while driving erratically.

The officers continued to pursue defendant for approximately one mile, covering about thirteen or fourteen city blocks. During that pursuit, defendant drove through six stop signs without stopping and also drove on the wrong side of the roadway. At another point, he drove the wrong way down a one-way street. Defendant threw a handgun out of the window that was later retrieved by the officers and found to be loaded with hollow-nosed bullets. During the pursuit, neither defendant nor the police officers traveled at speeds in excess of thirty miles per hour. Defendant stopped his vehicle only after his path was blocked by three other police vehicles. At that point, defendant jumped out of the Honda and attempted to run, but he was apprehended immediately.

Defendant was charged with second-degree eluding a police officer, unlawful possession of a handgun, possession of hollow-nosed bullets, and a disorderly persons offense of resisting arrest. He was also charged with violations of several motor vehicle statutes, including careless driving, failing to stop for stop signs, and traveling the wrong way down a one-way street.

Defendant was tried before a jury on all of the charges, including the motor vehicle charges and the disorderly persons offense. The jury found defendant guilty of second-degree eluding a police officer, third-degree unlawful possession of a weapon, fourth-degree possession of a prohibited weapon, resisting arrest, and all of the motor vehicle charges. Defendant was sentenced to eight years of imprisonment on the eluding charge, a concurrent sentence of four years on the possession of a weapon charge, a concurrent sentence of eighteen months on the possession of a prohibited weapon charge, and a concurrent sentence of six months on the resisting arrest charge.

In a published opinion, the Appellate Division merged defendant's resisting arrest and careless driving convictions with the

second-degree eluding conviction and otherwise affirmed. *State v. Wallace,* 313 *N.J.Super.* 435, 438–43, 712 *A.*2d 1270 (1998). The court rejected defendant's contention that because the "risk of death or injury to any person" is an essential element of second-degree eluding, it was reversible error for the trial court to fail to instruct the jury on the meaning of the word "injury." *Id.* at 440, 712 *A.*2d 1270. The court concluded that the phrase "injury to any person" need not be defined for a jury because the phrase is clear and includes injury risks of all types. *Ibid.* We granted defendant's petition for certification. *State v. Wallace,* 157 *N.J.* 544, 724 *A.*2d 803 (1998).

## II

Defendant argues that the Appellate Division's decision is inconsistent with the Legislature's intent to limit the term "injury" to "bodily injury" rather than injury risks of all types. Defendant also argues that *State v. Dorko,* 298 *N.J.Super.* 54, 58, 688 *A.*2d 1109 (App.Div.), *certif. denied,* 150 *N.J.* 28, 695 *A.*2d 670 (1997), correctly held that the term "injury" must be defined for a jury as an element of the offense of second-degree eluding.

The Passaic County Prosecutor argues "that despite the holding in *Dorko,* [defendant's second-degree eluding conviction] should not be reversed. . . . A review of the trial court's jury charge clearly establishes that the instruction was proper." The Passaic County Prosecutor disagrees "with the holding in *Dorko* in that absence of a definition of 'injury' would lead the jury to speculate as to what extent of an injury would satisfy the statute. A jury of average intelligence would use a definition of injury as used in *N.J.S.A.* 2C:11–1a."

The Attorney General, as *amicus curiae,* argues that because the Legislature did not define "risk of death or injury to any person," it intended an all-inclusive ordinary meaning. The Attorney General points to many sections of the Code to illustrate that the Legislature knew how to limit the term "injury," and because it chose not to, it intended an all-inclusive meaning.

-A-

The Legislature has not defined the phrase "risk of death or injury to any person" or the term "injury" in the Code. For that reason, we must examine the legislative history of the Code's present second-degree eluding offense. When the Code became effective on September 1, 1979, eluding was part of the resisting arrest offense, *N.J.S.A.* 2C:29–2. The offense was elevated from a disorderly persons offense if the perpetrator: (1) "[u]ses or threatens to use *physical force or violence* against the law enforcement officer or another," *N.J.S.A.* 2C:29–2a (emphasis added); or (2) "[u]ses any other means to create a substantial risk of causing *physical injury* to the public servant or another." *N.J.S.A.* 2C:29–2b (emphasis added). The source for that section of our Code was Section 242.2 of the Model Penal Code.

By *L.* 1981, *c.* 290, § 28, effective September 24, 1981, the Code was amended to renumber the sections and to create a separate offense for eluding in *N.J.S.A.* 2C:29–2b. That offense was restricted to the use of motor vehicles and was only a disorderly persons offense.

The Code was amended again in 1991 to make eluding a fourth-degree offense if there was a risk of death or injury. *L.* 1991, *c.* 343, § 3. A permissive inference regarding a person's conduct during flight or attempt to elude was added at the same time. *Ibid.* Finally, in 1993, eluding was elevated from a fourth-degree offense to a crime of the third-degree. *L.* 1993, *c.* 219, § 5. It became a second-degree offense if the attempt to elude created a risk of death or injury to any person. *Ibid.* At the same time, the Legislature amended *N.J.S.A.* 2C:12–1b(6), the section of the Code relating to aggravated assault by a motor vehicle while eluding the police or law enforcement person, to eliminate the requirement of "serious bodily injury." *L.* 1993, *c.* 219, § 2. It substituted "any bodily injury." *Ibid.* Read together the sections suggest that the Legislature intended both second-degree eluding and second-degree aggravated assault caused while eluding a law enforcement officer under *N.J.S.A.* 2C:12–1b(6) to require "bodily

injury" or "risk of bodily injury" as defined in *N.J.S.A.* 2C:11–1a rather than "serious bodily injury."

▮▮▮ Bodily injury "means physical pain, illness or any impairment of physical condition." *N.J.S.A.* 2C:11–1a. The history of the eluding offense indicates the Legislature's intent to restrict the injury or risk of injury to physical injury. Unless the jury is told that the risk of injury means risk of any physical injury, a jury in an eluding case could convict a defendant because of the risk of a nonphysical or psychological injury. Based on the requirement that a criminal statute must be strictly construed, *State v. Valentin,* 105 *N.J.* 14, 17, 519 *A.*2d 322 (1987), that each element of an offense must be properly defined for a jury, *State v. Green,* 86 *N.J.* 281, 288, 430 *A.*2d 914 (1981), and that the probable legislative intent in respect of these statutory provisions be applied, *Township of Stafford v. Stafford Tp. Zoning Bd. of Adjustment,* 154 *N.J.* 62, 71, 711 *A.*2d 282 (1998), we hold that in a second-degree eluding case, the jury must be instructed that the term "injury" means bodily injury as defined in *N.J.S.A.* 2C:11–1a. To that extent, we agree with *Dorko*'s requirement that "injury" must be defined for the jury. Clearly, property injury or damage could never satisfy the statutory requirement of "risk of death or injury to *any person.*"

-B-

▮▮▮ The failure to define the term "injury" for the jury in this case was harmless error. The case was tried on the theory that because defendant violated our traffic laws, his eluding created a rebuttable inference that the flight or attempt to elude posed a risk of death or injury to any person within the meaning of *N.J.S.A.* 2C:29–2b.

The eluding statute provides that "there shall be a permissive inference that the flight or attempt to elude creates a risk of death or injury to any person if the person's conduct involves a violation of chapter 4 of Title 39 or chapter 7 of Title 12 of the Revised Statutes." *N.J.S.A.* 2C:29–2b. The permissive inference may be

used if the defendant is found to have violated one or more of the motor vehicle statutes contained in Title 39, chapter 4.

Unlike the situation in *Dorko,* the trial court in this case instructed the jury on the underlying motor vehicle offenses with which defendant had been charged. The court first instructed the jury on the elements of the crime of second-degree eluding and the applicable permissive inference:

> If you find that the State has proven all six of the elements [of third-degree eluding] beyond a reasonable doubt, you must go on in your deliberations to consider a seventh element which will distinguish the third degree eluding from the greater offense of a second degree eluding. The State must prove beyond a reasonable doubt the seventh element which is that the flight or attempt to elude created a risk of death or injury to any person. You may infer such a risk if the defendant's conduct, in fleeing, or in attempting to elude the officer, involved a violation of the motor vehicle law of this State.

> It is alleged that the defendant's conduct involved a violation of the motor vehicle laws. You have heard the defendant has been charged with a number of motor vehicle offenses: careless driving, six charges of failing to stop at a stop sign, going up the wrong way on a one-way street and crossing into the wrong side of the street. However, you are not required or compelled to draw this inference. As I have already explained it, it is your exclusive province to determine whether the facts and circumstances shown by the evidence support any inference and you are always free to accept or reject any inference if you wish.

The trial court also instructed the jury on each element of the following motor vehicle offenses with which defendant had been charged: careless driving, *N.J.S.A.* 39:4–97, failing to stop at a stop sign, *N.J.S.A.* 39:4–144, driving the wrong way on a one-way street, *N.J.S.A.* 39:4–85.1, littering or throwing debris from his vehicle, *N.J.S.A.* 39:4–64, leaving a vehicle with the engine running, *N.J.S.A.* 39:4–53, and failure to keep right, *N.J.S.A.* 39:4–82. The jury found defendant guilty of violating those motor vehicle laws.

Under the proper jury instructions, the State, in reliance on the permissive inference, was not obligated to prove affirmatively that there was "any person" who was placed at risk of death or injury in order to establish that defendant was guilty of second-degree eluding. The present case is to be distinguished from *Dorko* where the jury was not asked to decide whether the motor vehicle statutes had been violated. Here, the jury found that defendant

had committed multiple violations of motor vehicle and traffic laws, and thus properly applied the permissive inference.

-C-

■ Finally, we disagree with defendant and the conclusion in *Dorko* that if the statutory permissible inference of *N.J.S.A.* 2C:29–2b is unavailable, the prosecutor must prove that some member of the public was in the vicinity of the chase caused by the eluding vehicle. We are satisfied that the Legislature intended to protect all persons by the eluding statute, including the police officers occupying the chasing vehicle and any persons in the eluding vehicle, as well as any people who could potentially be exposed to injury or death along the chase route. In our view, the statute was designed to punish those who elude the police and actually cause injury or death, as well as those whose unlawful conduct creates a possibility of injury to others.

In this case, as the Appellate Division properly noted, "a motor vehicle pursuit through the city streets of Paterson in a residential or commercial area at 10:45 p.m. create[d] a risk of death or injury" to people. *Wallace, supra,* 313 *N.J.Super.* at 443, 712 *A.*2d 1270. The evidence of the time of day of defendant's chase, the residential or commercial character of the neighborhood, and the volume of traffic all circumstantially demonstrate that people were likely to be in the area and that they were put at risk of death or injury by defendant's eluding.

Because the permissive inference applied in this case, there was no need for the State to present circumstantial evidence to prove that defendant's conduct produced a risk of death or injury to any person.

III

We hold that the term "injury" must be defined in a second-degree eluding charge except where the permissive inference can be drawn. The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.