817 A.2d 419 (2003)
358 N.J. Super. 241
STATE of New Jersey, Plaintiff-Respondent,
v.
Travis MOORE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 2003.
Decided March 12, 2003.
Yvonne Smith Segars, Public Defender, attorney for appellant (Alyssa Aiello, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondent (Steven J. Zweig, Deputy Attorney General, of counsel and on the brief).
Before Judges KING, LISA and FUENTES.
The opinion of the court was delivered by LISA, J.A.D.
This appeal requires us to determine whether eluding an officer, N.J.S.A. 2C:29-2b, is elevated from a third-degree to second-degree crime where the defendant's unlawful conduct creates a risk of *420 death or injury to himself, but to no one else. We hold it does not.
After a trial by jury, defendant was convicted of second-degree eluding and sentenced to seven-years imprisonment. The jury acquitted defendant of possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10a(1), and possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5a(1) and -5b(3). The judge who presided over the jury trial adjudicated the motor vehicle charges arising out of the incident. R. 3:15-3(a)(2). The judge found defendant guilty of careless and reckless driving, but merged the careless with the reckless conviction, and the reckless with the second-degree eluding conviction. The judge found defendant not guilty of failure to wear a seatbelt, operating a motor vehicle with tinted windows and possession of a CDS in a motor vehicle.
A person is guilty of third-degree eluding who operates a motor vehicle on a street or highway, who knowingly flees or attempts to elude a police or law enforcement officer after receiving a signal from the officer to bring the vehicle to a full stop. N.J.S.A. 2C:29-2b. The offense is elevated to a second-degree crime "if the flight or attempt to elude creates a risk of death or injury to any person." Ibid. The State tried the case on the theory that defendant created a risk of death or injury to himself, but to no one else. The judge denied defendant's motion at the end of the State's case, R. 3:18-1, to dismiss the second-degree eluding charge (and, implicitly, to submit only the third-degree charge to the jury).
The judge instructed the jury that the enhancing element would be satisfied if "the flight or attempt to elude created a risk of death or injury to any person and that person would include and is alleged to be the defendant himself." He reiterated, "In order to find this element, you must determine that there was at least one person put at risk by the defendant's conduct and that would be according to the State's allegations the defendant himself." The jury verdict sheet correspondingly asked the jurors, if they found defendant guilty of third-degree eluding, to further determine if defendant's conduct "created a risk of death or injury to the defendant."
On appeal, defendant contends the trial judge's instruction on second-degree eluding improperly broadened the scope of the offense, thereby violating defendant's right to due process of law. We agree with this contention and now reverse.
At 12:15 a.m. on January 12, 2001, Lt. Auker, in uniform and patrolling in a marked police car, observed a car traveling at a high rate of speed in the opposite direction on Industrial Road in Carteret. Auker made a U-turn and activated his overhead lights. He estimated the vehicle's speed at close to sixty miles per hour in a forty miles per hour zone. The vehicle pulled over without incident. The distance from the point of Auker's initial observation of the vehicle to the point of the stop was about one-half of a mile, and the elapsed time between those events was less than one minute.
As Auker exited his car and approached the stopped vehicle, he observed a lone occupant, later determined to be defendant. According to Auker, as he approached defendant's car he placed his hand on his gun and unsnapped the restraint, but never removed it from the holster. He did this for his safety because of the late hour and because defendant leaned towards the glove compartment. According to defendant, Auker unholstered his gun, pointed it in defendant's face and addressed him using a racial epithet. Under either version of this interaction, defendant then sped away from the scene.
*421 Defendant contends he panicked and left in fear of the officer. The State urges an inference that defendant left because there was CDS in the car, which he did not want to be discovered.
Auker returned to his car and began a pursuit, with his overhead lights and siren on. Auker knew of a sharp curve in the roadway and consciously held down his speed to about fifty to fifty-five miles per hour. He "backed off" hoping defendant would slow down. Auker radioed for back-up, who he instructed to proceed to an intersection beyond the curve, where they could intercept defendant. Defendant accelerated rapidly, reaching a speed estimated by Auker of sixty to seventy miles per hour. After traveling about one-half of a mile from the initial stop in less than one minute, defendant did not successfully negotiate the curve. His car left the road, striking a utility pole and severing it in half. There may have been some snow or ice on the roadway that may have contributed to the crash. Defendant was seriously injured and was removed to the hospital by a medivac helicopter.
CDS was found in the wrecked car. The car was owned by defendant's brother. Defendant testified he had just borrowed it to drive home and had no knowledge of the presence of CDS. The jury apparently accepted this testimony.
Auker testified that traffic in the area was "very light." There was no testimony about any other vehicles actually in the area during the course of the eluding, nor of any pedestrians. This portion of Industrial Road is a "fairly wide roadway" in an industrial area.[1] The State did not contend that Auker, who prudently drove at a safe speed, was placed at risk.
Thus the circumstances do not provide a basis upon which an inference could reasonably be drawn that "people were likely to be in the area and that they were put at risk of death or injury by defendant's eluding." State v. Wallace, 158 N.J. 552, 560, 730 A.2d 839 (1999). Certainly, there was no direct proof of people in the area. The State did not seek to avail itself of the permissive inference in N.J.S.A. 2C:29-2b, which allows a jury to infer that a defendant creates a risk of death or injury to any person if the defendant's conduct involves a violation of chapter 4 of Title 39. The only such violation the State alleged during the course of the eluding was reckless driving, based only on excessive speed.[2] A permissive inference charge was not given. Therefore, whether "any person" in N.J.S.A. 2C:29-2b includes the defendant is squarely presented.
The term "any person" seems simple. Literally, it encompasses all natural persons, N.J.S.A. 2C:1-14g, without exclusion. The literal meaning of the term, therefore, without regard to its context, does not exclude defendant, and therefore includes him. Context, however, cannot be disregarded. The Code of Criminal Justice uses the same term in contexts where the defendant is plainly not included. See, e.g., N.J.S.A. 2C:12-1.2a (Endangering an injured victim is accomplished by defendant causing bodily injury to "any person."); N.J.S.A. 2C:12-2b(2) (Although N.J.S.A. 2C:12-2 is entitled "Recklessly Endangering Another Person," subsection b(2) makes it a crime to entice "any person" to take "any treat, candy,....");
*422 N.J.S.A. 2C:13-5a(3) (Criminal coercion is committed if, with purpose unlawfully to restrict another's freedom of action, defendant exposes a secret which would tend to subject "any person" to hatred, contempt or ridicule, etc.); N.J.S.A. 2C:21-16 (Securing execution of documents by deception is accomplished where it affects or is likely to affect the pecuniary interest of "any person."); N.J.S.A. 2C:27-3a(1) (A defendant who threatens unlawful harm to "any person" with purpose to influence a decision, etc. by a public official, etc., commits an offense); N.J.S.A. 2C:37-2a(1) (A defendant promotes gambling who accepts money or property pursuant to an agreement with "any person" to participate in gambling activity). Defendant points to such Code sections to support his argument that the terms "any person," "anyone," "another," and "another person" are used interchangeably throughout the Code.
Where statutory language is clear and unambiguous, it is our duty to enforce it as written. State v. Toth, 354 N.J.Super. 13, 19, 804 A.2d 565 (App.Div. 2002). Where the language of a statute is susceptible of more than one meaning, however, resort must be had to extrinsic sources to determine the correct meaning. State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997). In these circumstances, such items as "legislative history, committee reports, and contemporaneous construction may be used to help resolve any ambiguity and to ascertain the true intent of the Legislature." Ibid. We conclude that the term "any person," in the context of N.J.S.A. 2C:29-2b, is susceptible to two meanings, one which includes the defendant and one which does not.
Our conclusion is premised on (1) examples such as those we have listed which demonstrate different meanings for the term throughout the Code; (2) the use by the Legislature, in some instances, of language specifically including a defendant, rather than using the "any person" language. See, e.g., N.J.S.A. 2C:30-2 (Official misconduct is committed when a defendant engages in the proscribed activity with purpose to obtain a benefit "for himself or another"); and (3) the general and common notion that victim-oriented criminal conduct is typically measured by harm or a threat of harm caused by the actor to others, not to him or herself. We therefore look beyond the literal meaning of the term to glean its correct meaning.
When the Code was originally adopted in 1979, eluding was not a separate offense, but was encompassed within the offense of resisting arrest under N.J.S.A. 2C:29-2. State v. Wallace, supra, 158 N.J. at 557, 730 A.2d 839. By L. 1981, c. 290, § 28, effective September 24, 1981, N.J.S.A. 2C:29-2b was added to create the separate offense of eluding, which was restricted to the use of motor vehicles and was graded only as a disorderly persons offense. Ibid.
By L. 1989, c. 84, § 1, effective May 31, 1989, N.J.S.A. 2C:29-2b was strengthened by adding a mandatory loss of driving privileges for violators. The grading of the offense was not changed, and no enhancement was added if the violator created a risk of death or injury. The legislative history accompanying this enactment evidenced concern for danger to the violator as well as others. The sponsors' statement stated:
A motorist fleeing or attempting to elude a police officer may create a dangerous situation for himself, the police officer and other drivers in the vicinity. Fatal accidents have been caused by persons driving a motor vehicle in an attempt to evade police officers. The purpose of this bill is to discourage persons from placing themselves and others *423 in danger by using a motor vehicle to elude police or law enforcement officers.
[Sponsor's Statement, Assembly No. 1825.]
A Star-Ledger article, included in the bill's official legislative history, quotes the bill's co-sponsor, Assemblyman Robert Franks, as stating, "A driver who flees or speeds off in an attempt to escape apprehension can create a dangerous situation for himself, the police and other motorists in the vicinity." Matthew Reilly, Governor enacts law permitting hearsay evidence in child abuse cases, Star-Ledger, June 2, 1989. The desired deterrent effect was accomplished, however, by increasing the penalty, not by enhancing the offense if the undesirable risk was created.
By L. 1991, c. 341, § 3, effective January 7, 1992, N.J.S.A. 2C:29-2b was amended to introduce, for the first time, an enhanced offense if the offender's eluding conduct "creates a risk of death or injury to any person." This amendment also included the permissive inference provision. Eluding remained a disorderly persons offense, and the enhanced offense was graded as a fourth-degree crime. As originally proposed, the amendatory language was: "except that, if the flight or attempt to elude creates a substantial risk of injury to another, the person is guilty of a crime of the fourth degree." (Emphasis added). Senate, No. 1192, Pre-Filed For Introduction in the 1990 Session, First Reprint. The bill passed the Senate in this form on March 29, 1990 and was then referred to the Assembly Judiciary, Law and Public Safety Committee. Legislative Index.
On March 7, 1991, that Committee recommended a change in the amendatory language, to provide: "except that, a person is guilty of a crime of the fourth-degree if the flight or attempt to elude creates a risk of death or injury to any person." (Emphasis added) Senate, No. 1192, Pre-Filed For Introduction in the 1990 Session, First Reprint. On December 2, 1991 the Assembly passed the bill in its amended form; the Senate passed the amended bill on December 9, 1991; and it was finally approved in that form on January 7, 1992. Legislative Index. The State argues: "The fact that the Legislature specifically rejected the term `to another,' replacing it with the phrase `to any person,' conclusively establishes that it specifically intended that creating a risk of death or injury to the eluding party be included within the [enhanced] offense."
Other portions of the legislative history of this bill contradict the State's position. The March 7, 1991 Committee Statement explaining the Committee's recommended amendments states the bill would upgrade eluding to a fourth-degree offense if it creates a risk of death or injury to "any person." The Statement continues, "As amended, there shall be a permissive inference that a flight or attempt to elude in a motor vehicle creates a risk of death or injury to another if the conduct involves a violation of chapter 4 of Title 39." (Emphasis added.) Assembly Judiciary, Law and Public Safety Committee Statement to Senate, No. 1192, with committee amendments, Dated: March 7, 1991. The amended bill uses the "any person" term in the permissive inference provision. The Committee Statement thus provides support for defendant's position that the Legislature uses the terms interchangeably.
The State also relies on a News Release issued by the Office of the Governor on January 7, 1992, which states: "The law aims to address a problem that has grown more severe in recent years: deaths and injuries caused by people fleeing from police." Office of the Governor, New Release, January 7, 1992. The State argues "[t]here is no indication that the Legislature was less concerned if the death and *424 injury caused by people fleeing from police happened to occur to the people doing the fleeing."
But a closer look at the News Release and another item in the legislative history reveals otherwise. The News Release states that "[t]he legislation was supported by county prosecutors and by police organizations" and that even "[i]n cases where no one is killed or injured, but the risk of that happening is created" the new law upgrades the eluding offense from a disorderly persons offense to a fourth-degree crime. Ibid. A news article contained in the official legislative history sheds light on the incident that inspired the bill and the kind of risks that underlie the support of the law enforcement community:
[The sponsors'] bills were proposed because of police chases in the late 1980's that ended with the deaths of innocent drivers who were killed by fleeing suspects. One was Desere M. LaCrosse, 19, who was driving through Toms River one night in November 1988 when her car was struck by a vehicle whose driver was fleeing from a Seaside Heights officer.
County prosecutors and police organizations supported the new law because they saw a growing willingness by criminal suspects to risk other people's lives by leading police on car chases, officials with the governor's office said.
[Press Statehouse Bureau, Drivers who run from police face harsher penalties, Asbury Park Press, Jan. 8, 1992 (emphasis added).]
Contrary to the State's contention, the history accompanying this bill includes no concern for the well-being of the offender, but only for that of others. The history relates an overriding concern for the well-being of innocent third parties as the impetus and purpose of the bill. Thus, while the bill's amendment during the legislative process is significant, it is by no means conclusive of the intention proffered by the State. The legislative intent is somewhat mixed.
N.J.S.A. 2C:29-2b was next amended by L. 1993, c. 219, § 5, effective August 2, 1993, which upgraded disorderly eluding to a third-degree offense and upgraded the enhanced offense from fourth-degree to second-degree. There is no change in the "any person" language in the statute. Thus the statutory amendments themselves add nothing to our analysis of the legislative intent. We do find significance, however, in the legislative history of this amendment.
The Sponsor's Statement, the Assembly Judiciary, Law and Public Safety Committee Statement and the Senate Judiciary Committee Statement all say this:

Under present law, the offense of eluding a law enforcement officer while in operation of a motor vehicle is punishable as a disorderly persons offense.... If the eluding results in the creation of a risk of injury or death to another person, eluding is presently graded as a crime of the fourth degree.... This bill would upgrade eluding from a disorderly persons offense to a crime of the third degree.... If the offense creates a risk of injury or death, the bill would grade eluding as a crime of the second degree....
[Sponsor's Statement to Senate, No. 1205 (emphasis added); Assembly Judiciary, Law and Public Safety Committee Statement to Senate, No. 1205 with committee amendments, Dated April 5, 1993 (emphasis added); Senate Judiciary Committee Statement to Senate, No. 1205, Dated: October 8, 1992 (emphasis added).]
These official statements indicate that the legislators amending the law deemed its *425 present status, after the previous amendment, to require creation of the risk of death or injury to "another person" to sustain the enhanced offense. The Governor's bill-signing statement echoed this sentiment: "This bill puts the brakes on a frightening and dangerous act. Suspects who lead police on high speed chases put everyone around them at risk of injury or death." Office of the Governor, News Release, August 2, 1993 (emphasis added).
At best, the legislative history is ambiguous. The difference between a third and second-degree crime is substantial. The two grades of crimes do not constitute a mere continuum, the former carrying a potential ordinary term prison sentence of three to five years and the latter five to ten years. N.J.S.A. 2C:43-6a(3) and -6a(2). A defendant convicted of third-degree eluding is not subject to a presumption of imprisonment. N.J.S.A. 2C:44-1e; State v. Pineda, 227 N.J.Super. 245, 250-51, 546 A.2d 578 (App.Div.1988), aff'd in part, rev'd in part, 119 N.J. 621, 575 A.2d 855 (1990). A defendant convicted of second-degree eluding, even if a first offender, is subject to a presumption of imprisonment, which is rarely overcome. N.J.S.A. 2C:44-1d; State v. Jabbour, 118 N.J. 1, 570 A.2d 391 (1990). The substantial disparity in consequences emphasizes the need for clarity in differentiation of the offenses. See N.J.S.A. 2C:1-2a(4) and (5).
Defendant argues that interpretation of the "any person" term to include him is an overbroad construction which denies him of due process. Penal statutes must be strictly construed. State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987). This rule "has at its heart the requirement of due process. No one shall be punished for a crime unless both the crime and its punishment are clearly set forth in positive laws." Id. at 17-18, 519 A.2d 322 (quoting In re Suspension of DeMarco, 83 N.J. 25, 36, 414 A.2d 1339 (1980)). "Penal laws cannot be extended by implication or intendment. Where more than one reasonable interpretation may be made, or where the language is ambiguousand the ambiguity is not manufactured by the defendantthe construction must be drawn against the state." State v. Valentin, supra, 105 N.J. at 18, 519 A.2d 322 (citing State v. Carbone, 38 N.J. 19, 23-24, 183 A.2d 1 (1962); 3 Sands Sutherland Statutory Construction ¶ 59.03 at 6-7.)
Our Supreme Court has commented on the Legislature's intended scope of protection in the eluding statute:
We are satisfied that the Legislature intended to protect all persons by the eluding statute, including the police officers occupying the chasing vehicle and any person in the eluding vehicle, as well as any people who could potentially be exposed to death or injury along the chase route. In our view, the statute was designed to punish those who elude the police and actually cause injury or death, as well as those whose unlawful conduct creates a possibility of injury to others.
[State v. Wallace, supra, 158 N.J. at 560, 730 A.2d 839 (emphasis added).]
The State relies on the first quoted sentence; the defense on the second. The Court in Wallace did not have the occasion to consider the issue now before us. We read the passage in its entirety and its context. In the sentence preceding the quoted passage, the Court expressed its disagreement with the conclusion in State v. Dorko, 298 N.J.Super. 54, 688 A.2d 1109 (App.Div.), certif. denied, 150 N.J. 28, 695 A.2d 670 (1997), that the State must prove the presence of a member of the public in the vicinity of the chase who was exposed to injury. The Court thus expressed in the first quoted sentence a more expansive view, to include the pursuing police officers *426 and occupants of the eluding vehicle. The second quoted sentence states that those subject to enhanced punishment are individuals whose unlawful conduct creates a possibility of injury to others. It is illogical that the two are one and the same. Thus the expansive view stops short of including the defendant. We therefore conclude that "any person in the eluding vehicle" refers to that vehicle's passengers.
In its present form, in light of the legislative history and correlative Code provisions, we cannot find a legislative intent to include the offender in the protected class. In the absence of an express and definitive provision making clear that the offender is subject to enhanced punishment as a result of creating a risk of harm to him or herself, we decline to impute such a meaning. We doubt that an ordinary citizen of average intelligence would ascribe such a meaning to the statute as presently written. State v. Valentin, supra, 105 N.J. at 19, 519 A.2d 322. This is an appropriate case in which to invoke the doctrine requiring strict construction against the State of a penal statute.
Defendant's conviction of second-degree eluding is vacated. Defendant's motion to withhold from the jury second-degree eluding and submit to it only third-degree eluding should have been granted. The jury's finding of defendant's guilt of third-degree eluding is not challenged and remains undisturbed. The matter is remanded for resentencing on the third-degree eluding offense.[3]
Reversed and remanded.
NOTES
[1] The prosecutor described the area in her opening as "that portion of Carteret when you are heading north on the Turnpike you see all the oil, the big round oil tankers right in that area."
[2] The careless driving charge, also based only on excessive speed, was for defendant's driving before the initial stop.
[3] Vacation of the second-degree eluding conviction may result in "unmerging" the reckless driving conviction and imposing a separate sentence for that offense. State v. Pennington, 273 N.J.Super. 289, 295, 641 A.2d 1085 (App.Div.), certif. denied, 137 N.J. 313, 645 A.2d 141 (1994).