853 A.2d 238

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DAVON BUNCH, DEFENDANT–APPELLANT.

Argued February 3, 2004—Decided August 3, 2004.

536

538

*Alan I. Smith,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Linda K. Danielson,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey).

Justice ZAZZALI delivered the opinion of the Court.

Under *N.J.S.A.* 2C:29–2b, a person is guilty of second-degree eluding if, "while operating a motor vehicle on any street or highway in this State," the driver "knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop . . . [and] the flight or attempt to elude creates a risk of death or injury to *any person.*" (Emphasis added.) The primary issue in this appeal is whether the term "any person" in *N.J.S.A.* 2C:29–2b includes the eluding defendant. In holding that it does, we reject defendant's contention that a conviction for second-degree eluding cannot rest on a finding that the defendant's conduct created a risk of death or injury to no one but himself or herself.

We also address whether the trial court erred in submitting the charge of second-degree eluding to the jury, whether the prosecutor engaged in egregious misconduct that deprived defendant of a fair trial, and whether the sentence imposed for second-degree eluding was excessive. Because we find no merit in any of those claims, we affirm the judgment of the Appellate Division.

## I.

On October 6, 2000, at approximately 10:20 p.m., Officers Marcos Medina and Derek Landi of the Paterson Police Department were patrolling the streets of Paterson in a marked police car when they spotted a red Mustang being driven without its headlights illuminated. As the officers drove past the Mustang, which was heading in the opposite direction, they observed that the driver, later identified as defendant, was not wearing his seatbelt. Officers Medina and Landi made a U-turn, activated their overhead lights and siren, and began following the Mustang as it turned left at the next intersection and increased its speed.

During the chase, the officers observed defendant turn without signaling; drive through a residential and commercial area in excess of the speed limit; fail to heed two stop signs; swerve across double yellow lines into oncoming traffic while turning at an intersection; and drive the wrong way down a one-way street, requiring two or three drivers who had the right of way to pull over to avoid a collision. The chase ended when defendant lost control of the Mustang while turning right. As defendant turned, the Mustang's right-front tire blew out and the car hit a parked minivan.

Officers Medina and Landi pulled up behind the Mustang, exited the patrol car, and walked toward the crashed vehicle. As they approached the Mustang, defendant ran towards the officers and assaulted both of them. A struggle ensued during which Officer Medina tried to subdue defendant with mace. Defendant, however, broke free from the officers and fled on foot. In his attempt to escape apprehension, defendant shattered the windshield of a car when he jumped from the car's hood to hurdle a fence. The officers eventually apprehended defendant and placed him under arrest.

Defendant testified to a different version of events. He acknowledged that at approximately 10:20 p.m. on the evening of October 6, 2000, he was driving a red Mustang in Paterson when he passed Officers Medina and Landi in their patrol car. He also

admitted that on that evening he was driving without a license. According to defendant, however, he was wearing a seatbelt and had the Mustang's headlights turned on when he spotted the officers. He testified that after passing the patrol car, he turned right at the next intersection, made another right, and then turned down a one-way street. Although defendant acknowledged driving in the wrong direction down the one-way street, he explained that he intended to pull into his friend's driveway immediately after turning the corner. Because the driveway was full, he continued down the street, which he described as having no oncoming traffic.

According to defendant, Officers Medina and Landi first activated the overhead lights and siren as they followed him down the one-way street. In response, defendant attempted to pull to the side of the road, but claimed that he could not stop the vehicle because one of the tires was flat. Using the curb to slow down his speed, defendant eventually stopped the Mustang. He testified that he hit a pole while pulling over, but denied crashing into a parked car. The only damage sustained by the Mustang, according to defendant, was a crack in the headlight.

Defendant further testified that after pulling to the side of the road, he waited in the Mustang for the police officers to approach him. He claimed that one of the officers opened his car door, sprayed him with mace, and tried to pull him from the Mustang but was unsuccessful because defendant was wearing his seatbelt. After defendant unbuckled the seatbelt, the officer pulled defendant to the ground and struck him. Defendant then got up and fled on foot. He acknowledged that during the foot chase he climbed on the hood of a car in order to hurdle a fence, but he denied breaking the car's windshield.

Based on the evidence presented at trial, the jury convicted defendant of second-degree eluding, *N.J.S.A.* 2C:29–2b (count one); third-degree resisting arrest, *N.J.S.A.* 2C:29–2a(1) (count four); and criminal mischief, *N.J.S.A.* 2C:17–3a (count five). The jury acquitted defendant of two counts of third-degree aggravated

assault, *N.J.S.A.* 2C:12–1b(5)(a) (counts two and three). In a subsequent bench trial, the court found defendant guilty of eight related motor vehicle charges. Thereafter, defendant was sentenced to eight years imprisonment on the eluding charge, a concurrent fifteen-month term on the resisting arrest charge, and a concurrent 180–day term on the criminal mischief charge. The court also suspended defendant's driver's license for two years and assessed the appropriate fines.

In an unpublished opinion, the Appellate Division affirmed defendant's convictions. Without discussion, the court rejected defendant's claims that the trial court should have granted a judgment of acquittal on the second-degree eluding charge and that the eight-year sentence for that charge was excessive. The panel also dismissed defendant's claim of prosecutorial misconduct, explaining that the assistant prosecutor's question to defendant regarding his opinion of the veracity of the officers' testimony, although improper, was neither egregious nor prejudicial. The court, however, remanded the case to the trial court for resentencing on the conviction for third-degree resisting arrest because the imposed term of fifteen months fell below the three-to-five-year statutory range for third-degree crimes.

We granted defendant's petition for certification, 177 *N.J.* 577, 832 *A.*2d 326 (2003), and now affirm the judgment of the Appellate Division.

## II.

We first consider defendant's principal contention that the trial court committed prejudicial error in its charge to the jury on second-degree eluding. Because defendant did not challenge that jury instruction below, we will consider his claim under the plain-error standard. *R.* 2:10–2; *State v. Afanador*, 151 *N.J.* 41, 54, 697 *A.*2d 529 (1997). Under that standard, "[a] reviewing court may reverse on the basis of unchallenged error only if it finds plain error clearly capable of producing an unjust result." *Afanador, supra*, 151 *N.J.* at 54, 697 *A.*2d 529. Because proper

jury instructions are essential to a fair trial, " 'erroneous instructions on material points are presumed to' " possess the capacity to unfairly prejudice the defendant. *State v. Nelson*, 173 *N.J.* 417, 446, 803 *A.*2d 1 (2002) (quoting *State v. Martin*, 119 *N.J.* 2, 15, 573 *A.*2d 1359 (1990)). We, therefore, address the trial court's charge on second-degree eluding to determine whether it was erroneous and, if so, whether it had the capacity to deprive defendant of a fair trial.

A.

Pursuant to *N.J.S.A.* 2C:29–2b, a defendant is guilty of third-degree eluding if, "while operating a motor vehicle on any street or highway in this State[,] ... [he or she] knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle ... to a full stop[.]" The crime is elevated to one of the second degree "if the flight or attempt to elude creates a risk of death or injury to *any person*." *N.J.S.A.* 2C:29–2b (emphasis added). The eluding statute also establishes "a permissive inference that the flight or attempt to elude creates a risk of death or injury to any person" if the defendant's conduct constitutes a violation of motor vehicle laws. *Ibid.* Here, the State did not rely on that inference, but rather presented evidence that defendant's flight created a risk of death or injury to "any person."

■ Defendant submits that the trial court erred when it failed to instruct the jury that it could not convict defendant of second-degree eluding if it found that defendant placed only himself at risk during his attempt to escape apprehension. He argues that the court's instruction was inconsistent with *State v. Moore*, 358 *N.J.Super.* 241, 817 *A.*2d 419 (App.Div.2003), which held that the term "any person" is limited to persons other than the fleeing defendant. The State counters that *Moore* was wrongly decided and that "any person" is an all-inclusive term that clearly encompasses the defendant. It therefore contends that the trial court's second-degree eluding instruction was not erroneous. Our task,

then, is to resolve the meaning of "any person" in the context of *N.J.S.A.* 2C:29–2b.

■ Consistent with our well-established rules of statutory construction, we begin with the text of the statute. If the statutory language lends itself to only one interpretation and that interpretation is consistent with the overall legislative scheme, we must "apply the statute as written without resort to extrinsic interpretative aids." *In re Passaic County Utils. Auth.*, 164 *N.J.* 270, 299, 753 *A.*2d 661 (2000). Embedded in that canon of construction is the recognition that the terms used in a statute, if unambiguous in meaning, are the clearest indicators of legislative intent. *McCann v. Clerk of City of Jersey City*, 167 *N.J.* 311, 320, 771 *A.*2d 1123 (2001).

■ *N.J.S.A.* 2C:29–2b does not define the phrase "any person." In the absence of a clear indication from the Legislature that it intended "any person" to have a special definition, we presume that the phrase carries its "ordinary and well-understood meaning[ ]." *State v. Afanador*, 134 *N.J.* 162, 171, 631 *A.*2d 946 (1993). "Any," as commonly defined, means one out of a group, without differentiating among the group's members. *Webster's Third New Intern'l Dictionary* 97 (1971). When "any" is used in conjunction with "person," as in the eluding statute, the phrase embraces all natural persons, including the defendant. *See State v. Constantino*, 129 *N.J.Super.* 111, 113, 322 *A.*2d 470 (App.Div.1974) (concluding that words "any person" in statute governing issuance of revolver permits and firearms purchaser identification cards did not exclude anyone, even defendant chief of police, from its coverage). Hence, plainly read, an eluding offender whose flight creates a risk of death or injury to any person, including himself or herself, is guilty of a second-degree crime.

Defendant relies heavily on *State v. Moore, supra,* in which the Appellate Division held that a conviction for second-degree eluding cannot rest on evidence that the defendant created a risk of death or injury to only himself or herself. 358 *N.J.Super.* at 253, 817 *A.*2d 419. We disagree, however, with the premise underlying

that court's conclusion. In *Moore*, the court found unclear the phrase "any person." Although the panel noted that "[t]he literal meaning of [any person], ... without regard to its context, does not exclude defendant, and therefore includes him[,]" *id.* at 246, 817 *A.*2d 419, it perceived ambiguity when it considered the eluding statute in conjunction with other parts of New Jersey's Code of Criminal Justice (Code), *id.* at 247, 817 *A.*2d 419.

Specifically, the court observed that in several sections of the Code, "any person" plainly excluded the defendant. *Id.* at 246, 817 *A.*2d 419 (citing *N.J.S.A.* 2C:12–1.2a, 2C:12–2b(2), 2C:13–5a(3), 2C:21–16, 2C:27–3a(1), and 2C:37–2a(1)). In view of those provisions, the court concluded that in the context of the eluding statute, "any person" was susceptible to two interpretations: one that included the defendant and one that did not. *Id.* at 247, 817 *A.*2d 419. Finding little guidance in the legislative history of *N.J.S.A.* 2C:29–2, the court "invoke[d] the doctrine requiring strict construction against the State of a penal statute." *Id.* at 253, 817 *A.*2d 419. Under that rule, the court declined to interpret "any person" as including the eluding offender. *Ibid.*

We conclude that *Moore* erred in its initial determination that the term "any person," as employed in the eluding statute, admits of more than one interpretation. The court found ambiguity in that statute based on other provisions of the Code that used "any person" to mean any person other than the defendant. But that finding rests on the flawed premise that when lawmakers have used the same term in different parts of the Code to convey different meanings, the term is necessarily ambiguous wherever it appears. That premise overlooks the fact that the meaning of words depends on a number of factors, including the other words with which they are associated, *Afanador, supra,* 134 *N.J.* at 172, 631 *A.*2d 946, and the purpose of the particular legislation at issue. When it appears that the Legislature has ascribed a particular meaning to a term in one section but not in others, the proper approach is to analyze "each section ... to determine whether the context gives the term a further meaning that would resolve the

issue in dispute." *Robinson v. Shell Oil Co.*, 519 *U.S.* 337, 343–44, 117 *S.Ct.* 843, 847, 136 *L.Ed.*2d 808 (1997). It follows that if the meaning of the phrase is unambiguous from the specific context and that meaning is consistent with the fundamental purpose for which the legislation was enacted, the statute should be applied as written.

The provisions of the Code cited by the *Moore* court cast no doubt on the plain meaning of "any person" as it appears in *N.J.S.A.* 2C:29–2b. The language in each of those provisions evinces a legislative intent to exclude the defendant from the definition of "any person." For example, *N.J.S.A.* 2C:12–1.2a, which imposes criminal liability for endangering an injured victim, provides that "[a] person is guilty of endangering an injured victim if he causes bodily injury to *any person* ... and leaves the scene of the injury knowing or reasonably believing that the injured person is physically helpless, mentally incapacitated or otherwise unable to care for himself." (Emphasis added.) In that context, it is self-evident that "any person" means the victim left stranded at the scene of the injury. Because the defendant cannot be both the abandoned victim and the abandoner, there is no sensible interpretation of the provision that could include the defendant within the definition of "any person." But the fact that, based on the context in which it appears, "any person" does not include the defendant, does not thereby import ambiguity into *N.J.S.A.* 2C:29–2b where it otherwise does not exist.

The phrase "any person" in the definition of second-degree eluding is clear when read in conjunction with other parts of *N.J.S.A.* 2C:29–2. That statute is divided into two subsections. The first, subsection a, establishes the elements of resisting arrest and the second, subsection b, sets forth the elements of eluding. Under subsection a, resisting arrest is considered a crime of the third-degree if the defendant:

◼ Uses or threatens to use physical force or violence against the *law enforcement officer or another;* or

◼ Uses any other means to create a substantial risk of causing physical injury to the *public servant or another.*

[*N.J.S.A.* 2C:29-2a (emphasis added).]

Although the resisting arrest portion of *N.J.S.A.* 2C:29-2 limits the class of potential victims to a "law enforcement officer or another" and "public servant or another," the eluding portion of the statute does not contain such a limitation. "When 'the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.'" *Higgins v. Pascack Valley Hosp.*, 158 *N.J.* 404, 419, 730 *A.*2d 327 (1999) (quoting *GE Solid State, Inc. v. Director, Div. of Taxation*, 132 *N.J.* 298, 307-08, 625 *A.*2d 468 (1993)). Thus, considering the phrase "any person" in the context of the other language in *N.J.S.A.* 2C:29-2 further supports the conclusion that the Legislature intended to ascribe "any person" its ordinary meaning.

Moreover, enforcing the eluding statute as written does not produce an absurd result. Indeed, a literal interpretation of *N.J.S.A.* 2C:29-2b is consistent with our conclusion in *State v. Wallace*, 158 *N.J.* 552, 560, 730 *A.*2d 839 (1999), that in creating the crime of second-degree eluding, "the Legislature intended to protect all persons[,] . . . including the police officers occupying the chasing vehicle and *any persons in the eluding vehicle*, as well as any people who could potentially be exposed to injury or death along the chase route." (Emphasis added.) The Legislature's treatment of offenders who drive dangerously in an attempt to escape apprehension as more culpable than those who drive safely is understandable. Defendants who are willing to place themselves at risk of death or injury to elude a police officer demonstrate greater disrespect for the law and their own lives and, in the Legislature's view, should be exposed to greater punishment as second-degree offenders.

Having determined that there is no facial ambiguity in the eluding statute, we have no reason to resort to extrinsic aids such as legislative history. *See State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982) ("If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's

intent."). We note, however, that in this case the legislative history provides no meaningful assistance in resolving the question before us. As *Moore* observed, some portions of the legislative history support the literal interpretation of "any person" that we embrace today, but other portions suggest that lawmakers used "any person" to mean "another." 358 *N.J.Super.* at 248–51, 817 *A.2d* 419. For purposes of this opinion, we need not discuss that history in full. What is relevant is that the history fails to reveal the legislative intent behind the phrase "any person," as it appears in *N.J.S.A.* 2C:29–2b. The inconclusiveness of that history further convinces us that we must rely on the ordinary and well-understood meaning of the statutory language.

In sum, we are satisfied that in the context of the eluding statute, the phrase "any person" refers unambiguously to all natural persons, including the eluding defendant. Accordingly, a defendant who uses a motor vehicle to escape apprehension and in doing so creates a risk of death or injury to himself or herself is guilty of second-degree eluding. Because *Moore's* interpretation of *N.J.S.A.* 2C:29–2b is inconsistent with our construction of that statute, we overrule that decision.

### B.

■ In view of our plain-meaning interpretation of "any person," we hold that the jury instruction on second-degree eluding was not erroneous. The trial court first instructed the jury that to find defendant guilty of eluding, it had to find beyond a reasonable doubt that defendant while operating a motor vehicle, "knowingly fled or attempted to elude" Officers Medina and Landi after they "had signaled [defendant] to bring the vehicle to a full stop[.]" The court then charged the jury that eluding is elevated from a third-degree to a second-degree crime "if the flight or attempt to elude creates a risk of death or injury to any person." It further explained that to convict defendant of second-degree eluding, the jury had to find "that there was at least one person put at risk by the defendant's conduct including persons walking along the route

or police officers ... in the chasing vehicle." Although the trial court did not make explicit that the jury could convict defendant of second-degree eluding even if it believed that defendant placed only himself at risk, such an instruction was not warranted on these facts. The State's theory of the case was that during the high-speed chase, defendant created a risk of death or injury to persons other than himself. That theory was supported by the testimony of Officers Medina and Landi. In the circumstances of this case, then, the trial court was not required to clarify that "any person" included defendant. And, in any event, the exclusion of that explanation certainly worked to defendant's advantage. That is, without that instruction, the jury could only have surmised that the State had to prove that defendant created a risk to someone other than himself—precisely the result defendant now seeks to achieve.

## III.

Defendant raises a number of other challenges to his conviction and sentence. He contends that the trial court erred in submitting the second-degree eluding charge to the jury. In addition, he argues that prosecutorial misconduct warrants reversal of his convictions and that the sentence imposed is excessive. We agree with the Appellate Division that there is no merit in any of those claims.

## A.

Defendant argues that the trial court improperly submitted the second-degree eluding charge to the jury because there was insufficient evidence that anyone was placed at risk of death or injury by his conduct. When assessing the sufficiency of the evidence to support a conviction, the critical inquiry is

"whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt."

State v. Josephs, 174 N.J. 44, 80 [803 A.2d 1074] (2002) (quoting State v. Reyes, 50 N.J. 454, 459 [236 A.2d 385] (1967)).

Applying that standard to the present case, we conclude that the State presented more than sufficient evidence from which a rational jury could find, beyond a reasonable doubt, that defendant committed second-degree eluding. Officers Medina and Landi both testified that they observed defendant drive the wrong way down a one-way street, causing on-coming vehicles to pull over. From that testimony alone, a jury reasonably could infer that defendant placed at least one person at risk of death or injury during his attempt to escape apprehension.

## B.

Defendant also submits that the assistant prosecutor engaged in prejudicial misconduct when she asked defendant the following unobjected-to question during cross-examination: "So basically you want this jury to believe that everything that the officers came in here and testified to is untrue?" We agree with defendant that the assistant prosecutor should not have asked defendant to assess the credibility of another witness. *See State v. Frisby*, 174 N.J. 583, 594, 811 A.2d 414 (2002) (explaining that "the assessment of another witness's credibility is prohibited"). Nevertheless, in view of the substantial amount of evidence of defendant's guilt and the trial court's instruction to the jury that it must determine the witnesses' credibility, we conclude that the improper statement was not "so egregious that it deprived defendant of a fair trial." *State v. Ramseur*, 106 N.J. 123, 322, 524 A.2d 188 (1987).

## C.

Finally, defendant contends that a proper weighing of the aggravating and mitigating factors does not support the eight-year sentence that the trial court imposed for second-degree eluding. He also asserts that the trial court failed to adequately explain its reasons for imposing a sentence higher than the presumptive term.

From our review of the record, we are satisfied that the trial court fully complied with our sentencing guidelines and properly weighed the aggravating and mitigating factors. In view of defendant's extensive criminal history, the court's decision to impose a sentence one year higher than the presumptive seven-year term for second-degree crimes does not "shock the judicial conscience." *State v. Roth*, 95 *N.J.* 334, 365, 471 *A.2d* 370 (1984).

## IV.

The judgment of the Appellate Division is affirmed. The case is remanded to the Law Division for further proceedings consistent with the Appellate Division's opinion.

*For affirmance*—Chief Justice PORITZ and Justices VERNIERO, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—6.

*Opposed*—None.