**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0471-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RASHEEN T. KELLY,

    Defendant-Appellant.

_____

> Argued April 27, 2017 — Decided August 7, 2017
>
> Before Judges Hoffman and O'Connor.
>
> On appeal from Superior Court of New Jersey,
> Law Division, Salem County, Indictment No.
> 14-04-0271.
>
> Stephen W. Kirsch, Assistant Deputy Public
> Defender, argued the cause for appellant
> (Joseph E. Krakora, Public Defender,
> attorney; Mr. Kirsch, of counsel and on the
> brief).
>
> Brian Uzdavinis, Deputy Attorney General,
> argued the cause for respondent (Christopher
> S. Porrino, Attorney General, attorney; Mr.
> Uzdavinis, of counsel and on the brief).

PER CURIAM

    Defendant Rasheen T. Kelly appeals from his judgment of
conviction and sentence after a jury found him guilty of two

counts of third-degree aggravated assault on a corrections officer, N.J.S.A. 2C:12-1(b)(5)(h). He presents the following arguments for consideration:

### POINT I

> THE JURY INSTRUCTION ON SELF-DEFENSE — THE ONLY DEFENSE AT ISSUE IN THE CASE: (1) BADLY MISINFORMED THE JURY ON THE CORRECT BURDEN OF PROOF; (2) RAISED THE ISSUE OF "RETREAT" AND THEN DID NOT EXPLAIN HOW THAT DOCTRINE WOULD AFFECT THE CASE; AND (3) WAS NOT INCORPORATED INTO THE INDIVIDUAL COUNTS AGAINST DEFENDANT, THEREBY ALLOWING THE JURY TO CONVICT BASED UPON THE SIMPLE ELEMENTS OF THE CRIMES CHARGE WITHOUT EVER CONSIDERING THE APPLICABILITY OF SELF-DEFENSE TO THE CASE. (NOT RAISED BELOW).

### POINT II

> THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

After reviewing the record and law, we reject these arguments and affirm the trial court.

### I.

On March 10, 2014, defendant was serving a prison sentence at the Salem County Correctional Facility. That morning, corrections Officer Eric Perez was dispensing medications to the inmates in defendant's housing unit. According to the facility's procedures, before an inmate receives medication, he first returns to his cell to retrieve a cup of water. He may

not bring anything else with him when he receives his medication.

Defendant required Motrin three times a day because he recently had surgery on his finger. On the morning of March 10, he did not comply with the facility's procedures when he went to receive his Motrin. He had his cup of water, but he also had a "bag of mackerel in his pocket."[1] Officer Perez consequently told defendant he had to take the bag of mackerel back to his cell before he would dispense his Motrin to him. Defendant replied, "This is bullshit," but returned to his cell. As defendant came back to receive his medication, he "started making comments." Officer Perez told defendant "if he were to continue he was going to get lockdown," or Officer Perez would call for assistance. Defendant replied, "This fucking jail's whack. Fuck you and this jail." Officer Perez consequently called for assistance.

Officer Perez then told everyone other than defendant to "lock down their cells." He told defendant to "get on the ground." Defendant then punched him "in the left cheek." Officer Perez fell backwards, and defendant "got on top of" him. Defendant "kept swinging" and hitting Officer Perez, saying, "I'm going to fucking kill you." Officer Perez could not

---

[1] Defendant got the mackerel "from the commissary."

remember for how long this went on, but "it felt [like] a long time." When the unit's doors opened for the two-officer response team to enter, defendant focused his attention on them, enabling Officer Perez to get away from defendant.

Defendant squared off with the two officers and punched one of them in the face. Defendant resisted, but the two officers eventually "secured him to the ground" and handcuffed him. Officer Perez's lip was bleeding, so he left the unit to seek medical attention.

According to the facility's procedures, defendant required a medical examination because he had been in a physical altercation with an officer. The two officers consequently began escorting defendant to the medical unit. Defendant "continued to kick and scream and holler." The officers brought him back to the ground to regain control; one of the officers claimed defendant bit him.

The officers eventually brought defendant to the medical unit, where defendant started spitting blood at them. The officers brought defendant back to the ground and put a spit mask on him. Throughout this process, the two officers admitted to striking defendant in order to obtain his compliance with the facility's procedures. As one officer testified:

> You can use pain compliance, joint manipulation, or wrist lock. You know,

there's pressure points that you're able to utilize on the body. You get training in all of those things. Sometimes they work; sometimes they don't.

If you don't get compliance right away, you just have to keep trying to get compliance by using those kinds of tactics.

Defendant provided a far different account of the incident, testifying the officers attacked him, and he defended himself. He admitted he brought mackerel with him to receive his Motrin, but he also said Officer Perez repeatedly called him a "pussy" and "smart ass." Defendant also testified Officer Perez told him he was "not tough," and "they'd fuck [him] up." After Officer Perez called for assistance, he "attacked" defendant, who proceeded to defend himself. Defendant admitted he "probably got out of hand with it."

He denied resisting the two officers while they escorted him to the medical unit. Defendant denied biting one of the officers. He testified an officer punched his face without provocation "a couple more times . . . in front of the nurse" in the medical unit. When the officers subsequently took him to the shower, they continued to beat him. After the series of altercations, he could not "see out of" his eyes. Defense counsel then played a video of defendant's initial altercation

5

with Officer Perez, but defendant does not provide it in his appendix on this appeal.[2]

On April 30, 2014, a Salem County grand jury returned an indictment charging defendant with three counts of third-degree aggravated assault on a corrections officer, N.J.S.A. 2C:12-1(b)(5)(h). Before trial, defense counsel said, "We approved the jury charges, as well as the verdict sheet." After the first day of trial, the court asked defense counsel, "Anything I don't have in that you do want in" with respect to the jury instructions? Defense counsel said no. After the second day of trial, the court asked defense counsel, "Are we good to go" with respect to the jury instructions? Defense counsel replied, "Yes, Your Honor."

After instructing the jury on aggravated assault, the court issued the following instruction on self-defense:

> [Defendant] contends that if the State proves he used, or threatened to use force upon the other person, that such force was justified — justifiably used for his self-protection. The statute relating to self-protection, which we call justification, or self-defense, reads as follows.

---

[2] We again note the failure to include a complete record of items often impedes appellate review. See Johnson v. Schragger, Lavine, Nagy & Krasny, 340 N.J. Super. 84, 87 n.3 (App. Div. 2001).

A-0471-15T2

The use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force, by such other person, on the present occasion.

In other words, self-defense is the right of a person to defend against any unlawful force. Self-defense is also the right of a person to defend against seriously threatened unlawful force, that is actually pending, or reasonably anticipated.

When a person is in imminent danger of bodily harm, the person has the right to use force, when that force is necessary to prevent the use against him, of unlawful force.

The force used by [defendant] must not be significantly greater, and must be proportionate to the unlawful force threatened or used against him. Unlawful force is defined as force used against a person, without the person's consent, in such a way that the action would be a civil wrong or a criminal offense.

If the force used by [defendant] was not immediately necessary for his protection, or if the forced used by [defendant] was disproportionate in its intensity, then the use of such force by [defendant], was not justified, and the self-defense claim fails.

A person may also use non-deadly force in his own defense. If you find that [defendant] did use non-deadly force to defend himself, then you must determine whether the force was justified. The same reasonably (Indiscernible) standard that I explained to you when discussing — strike that, we have to —

A-0471-15T2

Let me start again. A person, as I've indicated, may use non-deadly force in his own defense. If you find that [defendant] did use non-deadly force to defend himself, then you must determine whether the force was justified.

A person may use non-deadly force to protect himself if the following conditions exist. (1) [T]he person reasonably believes he must use force. (2) [T]he person reasonably believes that the use of force was immediately necessary. (3) [T]he person reasonably believes he used force to defend himself against unlawful force; and, (4) the person reasonably believes that the level of the intensity of the force he uses is proportionate to the unlawful force he is attempting to defend against.

Remember, only if you conclude that the — in using non-deadly force, [defendant] reasonably believed he was defending against unlawful force, is a defense available to him.

The State has the burden to prove to you, beyond a reasonable doubt, that the defense of self-defense is untrue. This defense only applies if all the conditions or elements previously described exist. The defense must be rejected if the State disproves any of the conditions, beyond a reasonable doubt.

The same theory applies to the issue of retreat. Remember that the obligation of [defendant] to retreat only arises if you find that [defendant] resorts — strike that. I apologize.

Okay. If you find that the State has proven every element, beyond a reasonable doubt, and, you also find that it is inappropriate to disallow the claim of self-

8

defense, then you must find [defendant] guilty.[3]  If you find the State has proven every element, beyond a reasonable doubt, of the underlying offenses, but you also find that it is appropriate to allow the claim of self-defense, then you must find him not guilty.

If the State has failed to prove any of the elements of the underlying offenses, beyond a reasonable doubt, then you must find him not guilty.

So, basically, what we're saying here is, first, you determined if the State's proven it's case — has failed to prove its case, beyond a reasonable doubt.  If it's failed to prove it, your verdict will be not guilty.

Then you go on — if you find that the State has proved the case, beyond a reasonable doubt, but has also — there is also this defense of self-defense, your answer would revert from guilty to not guilty, because self-defense would be applicable.

If you find that [defendant] is guilty of one of the crimes, and the self-defense does not apply, then he would be guilty.

I have been reading from these legal instructions, which I'm sure is obvious to you.  I have given — I will be giving you two copies of the same instructions for your use in the jury room.

---

[3]  We note that the trial transcript reflects the court said "inappropriate to disallow," but we recognize the court either said or meant to say "inappropriate to allow," given the entirety of the paragraph.  Defendant's brief acknowledges that the transcribed language "makes even less sense."

Be aware that you may also — you must consider these instructions in their entirety, and that I am available to assist you in understanding the instructions if you need further assistance.

The jury subsequently convicted defendant of assaulting Officer Perez and the other officer who testified defendant punched him in the face, but acquitted defendant of the charge he assaulted the officer who claimed defendant bit him.

The trial court sentenced defendant to a prison term of ten years for assaulting Officer Perez and a consecutive prison term of five years for assaulting the other officer. The trial court granted the State's application for an extended term for count one under N.J.S.A. 2C:44-3(a), because it found defendant was over twenty-one years old, convicted of five indictable offenses on separate occasions, and the most recent offense occurred less than ten years ago.

The court noted defendant had over ten juvenile adjudications, one disorderly persons conviction, and five indictable convictions. The court therefore found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (recidivism), six, N.J.S.A. 2C:44-1(a)(6) (criminal history), and nine, N.J.S.A. 2C:44-1(a)(9) (deterrence). The court said it saw the video, and "there's an absolute need to deter not only [defendant], but the public in general from this type of conduct." Defense

counsel told the court that he "conceivably, can't make [an] argument regarding the mitigating factors." The court declined to find any. The court also noted it had to sentence defendant to consecutive terms under N.J.S.A. 2C:44-5(i) because the convictions were for assaulting corrections officers. Defendant now appeals.

## II.

Jury charges "must provide a 'comprehensive explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Singleton, 211 N.J. 157, 181-82 (2012) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). Because clear and correct jury charges are essential to a fair trial, State v. Adams, 194 N.J. 186, 207 (2008), "erroneous instructions on material points are presumed to possess the capacity to unfairly prejudice the defendant." State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)). However, an error in the charge that could not have affected the jury's deliberations does not amount to reversible error. State v. Docaj, 407 N.J. Super. 352, 365 (App. Div.), certif. denied, 200 N.J. 370 (2009). In that regard, "[i]f the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to

prejudice the defendant's case." Singleton, supra, 211 N.J. at 182. Moreover, we presume jurors follow a trial court's instructions. See State v. Brown, 180 N.J. 572, 583 (2004).

A self-defense charge is required when "any evidence raising the issue of self-defense is adduced, either in the State's or the defendant's case." State v. Kelly, 97 N.J. 178, 200 (1984). If such evidence is present, "then the jury must be instructed that the State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts; [and] acquittal is required if there remains a reasonable doubt whether the defendant acted in self-defense." Ibid.; see also State v. Gentry, 439 N.J. Super. 57, 63 (App. Div. 2015) (holding that a self-defense instruction is required, even when not requested, where the evidence indicates a rational basis for instructing it).

Here, defendant did not object to the self-defense charge, nor did he otherwise raise the issue he now argues on appeal. Because defendant did not object at trial, we review the charge for plain error. R. 1:7-2; R. 2:10-2; McKinney, supra, 223 N.J. at 494. Plain error in this context is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the

error possessed a clear capacity to bring about an unjust result." Adams, supra, 194 N.J. at 207 (alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). When reviewing a charge for plain error, an appellate court must not examine the "portions of the charge alleged to be erroneous in isolation; rather, 'the charge should be examined as a whole to determine its overall effect.'" McKinney, supra, 223 N.J. at 494 (quoting Jordan, supra, 147 N.J. at 422).

Defendant argues the trial court issued erroneous jury instructions in three respects: (1) it minimized the State's burden regarding self-defense, (2) it mentioned a duty to retreat without explaining it, and (3) it failed "to incorporate the absence of self-defense into each of the substantive counts as effectively an element that the State must disprove before a conviction can be returned." We disagree.

Defendant argues the trial court's "instructions, when considered on the whole, do not clearly and unequivocally inform the jurors that they should acquit defendant unless the state disproves self-defense beyond a reasonable doubt." The court, however, explicitly told the jury that "[t]he State has the burden to prove to you, beyond a reasonable doubt, that the defense of self-defense is untrue." The court then said, "The defense must be rejected if the State disproves any of the

conditions, beyond a reasonable doubt." These two sentences unequivocally told the jury the State had the burden to disprove defendant's claim of self-defense. We presume the jury followed these instructions and held the State to its burden. See Brown, supra, 180 N.J. at 583.

Defendant next argues, "The judge's mention of the 'obligation of [defendant] to retreat' was plain error, clearly capable of affecting the result when the judge did not clearly inform the jury of the mistake and correct the mis-charge." The record does not support this argument either. The court immediately realized it was issuing an irrelevant charge and told the jury to "strike that" without completing its description of the duty. Defendant contends the court did not explain what it intended to strike, but the context clearly shows it intended to strike its partial description of the duty to retreat. We presume the jury followed this instruction and did not consider any duty to retreat during its deliberations. See ibid.

Defendant relies on State v. Coyle, 119 N.J. 194 (1990), to argue the trial court should have "incorporated" the self-defense charge within the aggravated assault charge. We disagree. In Coyle, our Supreme Court addressed a trial court's obligation to clearly instruct the jury on the State's

obligation to disprove "beyond a reasonable doubt that the purposeful killing was not the product of passion [or] provocation" in a capital murder case. <u>Id.</u> at 221. The Court noted that "[i]f there is sufficient evidence of passion [or] provocation, a trial court must instruct the jury that 'to find murder it must be convinced beyond a reasonable doubt that the accused did not kill in the heat of passion.'" <u>Id.</u> at 221-22 (quoting <u>State v. Grunow</u>, 102 <u>N.J.</u> 133, 145 (1986)). The Court further noted the trial court

> instructed the jury that if it found beyond a reasonable doubt that the killing was purposeful, it should convict defendant of murder. Nowhere in the initial charge concerning purposeful murder did the court refer to the State's burden of disproving passion [or] provocation beyond a reasonable doubt. The trial court's initial charge concerning purposeful murder failed to make clear that if there is evidence of passion [or] provocation, a jury cannot convict for murder without first finding that the defendant did not kill in the heat of passion.
>
> [<u>Id.</u> at 222.]

Although the trial court in <u>Coyle</u> later instructed the jury on the role of passion or provocation, the Court deemed the belated charge ineffective, particularly because the trial court had explained in the initial charge on purposeful murder that the jury need not consider the lesser-included offenses of aggravated manslaughter or manslaughter, unless it determined

that the State had failed to prove murder beyond a reasonable doubt. Ibid.

In this case and in contrast to Coyle, the trial court clearly and unambiguously instructed the jury on the law of self-defense and its relation to aggravated assault. It never told the jury to stop deliberating if it found the State proved the elements of aggravated assault. No confusion occurred when the court issued sequential charges on aggravated assault and self-defense, which is a defense unrelated to the elements of aggravated assault. Significantly, the Court in Coyle explained:

> There is nothing inherently wrong with a sequential charge. Such charges assure that a jury renders 'a just verdict by applying the facts to the law as it is charged.' Indeed, there is nothing inherently wrong with the model charge for purposeful murder. Absent evidence of passion [or] provocation, sequential charges usually provide a framework for orderly deliberations.
>
> [Id. at 223 (citations omitted).]

We therefore conclude the trial court did not commit plain error when it sequentially instructed the jury on aggravated assault and self-defense.

Defendant also argues the trial court's sentence was excessive. He contends the trial court never found an extended term was necessary to protect the public. He states:

> The fact that State v. Pierce, 188 [N.J.] 155, 168-[69] (2006), holds that the "protection of the public" issue is now to be considered after the finding of eligibility for the extended term, i.e., when weighing the aggravating and mitigating factors, does not change the fact that it must, eventually, nevertheless be addressed by the judge in order to actually impose a sentence within the extended-term range.

In making this argument, defendant clearly overlooked additional, important language from Pierce, explaining:

> [A trial] court may consider the protection of the public when assessing the appropriate length of a defendant's base term as part of the court's finding and weighing of aggravating factors and mitigating factors. The finding is not a necessary condition, however, to the court's determination whether defendant is subject to a sentence up to the top of the extended-term range.
>
> [Id. at 170 (footnote omitted).]

We therefore decline to accept defendant's argument.

Defendant next argues the trial court erred because it failed to "be careful when assessing the aggravating and mitigating circumstances that are used to set the length of an extended term not to double-count the prior offenses which triggered the imposition of that term." We disagree. Defendant had five convictions for indictable offenses. N.J.S.A. 2C:44-3(a) requires only two convictions for indictable offenses. Moreover, once the trial court found defendant eligible for an extended term, the trial court still had the discretion to

17

sentence defendant to the same minimum sentence as it could have beforehand. Pierce, supra, 188 N.J. at 169. The trial court considered at least two of defendant's convictions when it found him eligible for an extended term, but that consideration did not constrain the court's discretion when it subsequently sentenced him.

Defendant argues the trial court "ignored two mitigating factors, which necessarily applied here: the fact that defendant did not cause or threaten serious bodily injury and did not contemplate causing such injury. N.J.S.A. 2C:44-1(b)(1) and (2)." Mitigating factor one states, "The defendant's conduct neither caused nor threatened serious harm[.]" N.J.S.A. 2C:44-1(b)(1). The second mediating factor states, "The defendant did not contemplate that his conduct would cause or threaten serious harm[.]" N.J.S.A. 2C:44-1(b)(2). We agree with defendant's trial counsel that these arguments are not conceivable given the facts of this case. Defendant punched Officer Perez in the face multiple times and the other officer once. These acts were clearly capable of causing serious harm, and defendant could not have committed them without contemplating that result. We therefore affirm the trial court's sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION