**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2857-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

THOMAS H. OUTLAND, a/k/a
THOMAS GO OUTLAND,
ISLAM GOODWIN, and THOMAS
H. JAMISON,

      Defendant-Appellant.

_____

Submitted April 3, 2019 – Decided June 17, 2019

Before Judges Alvarez and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-02-0107.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Timothy Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Tried by a jury, defendant Thomas Outland was convicted of second-degree conspiracy to commit robbery, N.J.S.A. 2C:15-1 and 2C:5-2, and fourth-degree possession of an imitation firearm for an unlawful purpose, N.J.S.A. 2C:39-4(e). He was acquitted of first-degree robbery, N.J.S.A. 2C:15-1. On August 25, 2017, the trial judge sentenced defendant to nine years imprisonment, subject to the No Early Release Act eighty-five percent parole ineligibility. See N.J.S.A. 2C:43-7.2. He imposed an eighteen-month term of imprisonment on the possession charge, to be served concurrently to the conspiracy. The sentences ran consecutive to a sentence defendant was then serving. He appeals the conviction and also argues the judgment of conviction (JOC) should be corrected to reflect the correct degree of the crime. We affirm defendant's conviction. With the State's consent, we remand for the limited purpose of correcting a typographical error in the JOC.

At trial, five McDonald's employees testified regarding the incident, which occurred after closing on September 4, 2015. Mr. Martinez, the only victim named in the robbery count, was about to place the restaurant receipts in

2

a safe in his office at the back. The remaining employees were cleaning and preparing for the following day.

Defendant and a person who was never identified entered the restaurant wearing masks and carrying firearms. Defendant was carrying what appeared to be a shotgun. As he walked towards the door to Martinez's office, a female employee saw him and began to cry.

Mr. Exume, another employee, testified that he heard defendant say to Martinez, "hold up, hold up, you're being robbed." Martinez only remembered seeing defendant standing in front of him holding a weapon. Exume realized that the shotgun was an imitation, and said: "I told him to, you know what the f--- did you do with a fake toys gun and I say it in a loud voice, as my military speaking, drill sergeant voice, very forceful." Defendant then lifted his ski mask and told Martinez, "this is a joke." Martinez recognized defendant because he had worked at the restaurant until approximately a month before. Martinez raised his hands to "lower the weapon that was there" as defendant approached him. Immediately afterwards, defendant left. Exume also testified that defendant laughed when he removed his ski mask, but that it sounded "fake."

Meanwhile, towards the front of the restaurant, the other masked man grabbed Mr. Estrada's arm, and pulled him over to a counter demanding his cell

3

A-2857-17T4

phone. While approaching Mr. Salazar, who was mopping the floor, the man slipped and fell. Salazar saw the man holding a gun, and although his understanding of English was limited, he emptied his pockets, placing his cell phone and twenty dollars on the table.

Defendant returned to the front of the restaurant still laughing, gave Estrada a hug, and told the other man to give everything back. Once the items were returned, defendant and the other man left.

Police were not called that night since Martinez knew defendant was the brother of a more senior manager at the same McDonald's, and he wanted to discuss whether he should report the incident with his general manager. One of the other employees contacted the authorities.

Defendant's trial strategy was to cast the incident as nothing more than a poor joke gone awry. The State's theory was that it was robbery, aborted when Exume announced that the weapon was a fake.

Three days before the trial was scheduled to begin, the court heard defendant's motion to represent himself, which had been filed some four months earlier. During the course of the colloquy, defendant explained he wanted to represent himself with the assistance of an attorney from the public defender's office, and that he had applied for their services. Defendant, a high school

graduate, was unable to accurately respond to the judge's questions regarding his sentencing exposure if convicted of robbery, including the fact that because he was mandatory extended-term eligible, he could be sentenced to life. He had limited experience with trials despite his criminal record. Defendant was unfamiliar with terms such as accomplice liability, renunciation, or the defense of intoxication. He was also unfamiliar with the criminal code or the rules of evidence. Defendant had fired his attorney that day.

Defendant did not know that he was charged with conspiracy in addition to robbery. He told the judge because he "was there when the incident took place," he was the most familiar with the circumstances and therefore "the best person to represent [him]self."

The judge denied the application, finding defendant lacked a sufficient understanding of the rudiments of the law, including affirmative defenses which might be applicable in his case. Most significantly, defendant had little understanding of the charges he faced or the grave potential sentencing consequences. The judge found that defendant's responses would "not support even remotely a finding that the defendant ha[d] intelligently attempted to waive the assistance of counsel." The judge noted that the attorney who was representing defendant at that time was the second lawyer in the case. The judge

5

then granted the attorney's application to withdraw in light of the fact that his client no longer wished him to represent him, and rescheduled the trial.

At the close of the case, the judge extensively reviewed jury charges with counsel, and after instructing the jury, reaffirmed that there were no objections. During deliberations, the jury asked the judge "[i]s it possible to find [defendant] guilty of conspiracy if we don't believe he intended to rob [Martinez][?]" The question was followed by a bullet point requesting "clarification of the meaning of 'conspiracy to commit robbery.'"

With counsel's consent, the judge told the jury:

> Yes, it is possible to find the Defendant guilty of conspiracy even if the jury does not believe the Defendant intended to rob [Martinez].
>
> "A conspiracy to commit the crime of robbery is a crime in itself separate and distinct from the crime of robbery. In other words, a defendant may be found guilty of the crime of conspiracy regardless of whether that defendant is guilty or not guilty of the crime of robbery."
>
> "Each offense in this indictment should be considered by you separately. The fact that you may find the Defendant guilty or not guilty of a particular crime should not control your verdict as to any other offense charged against the Defendant."
>
> As to seeking a clarification on conspiracy, I refer you to my previous legal instructions on

conspiracy from pages 15 to 18 in the written instructions.

Now on appeal, defendant's counseled brief asserts the following points:

POINT I
THE TRIAL COURT'S INCORRECT AND GROSSLY MISLEADING RESPONSE TO THE JURY'S QUESTION IMPROPERLY PERMITTED THE JURY TO CONVICT DEFENDANT OF CONSPIRACY EVEN IF THEY DID NOT BELIEVE HE HAD A SHARED PURPOSE TO COMMIT ROBBERY.

POINT II[1]
THE JUDGMENT OF CONVICTION SHOULD BE AMENDED TO REFLECT THE CORRECT DEGREE OF THE CRIME.

In his pro se brief, defendant raises the following point:

POINT I
THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT, A CRIMINAL DEFENDANT HIS CONSTITUTIONAL RIGHT TO REPRESENT HIMSELF AT TRIAL AFTER ASSERTING HIS CLEAR AND UNEQUIVOCAL, KNOWINGLY AND INTELLIGENTLY WAIVER OF HIS RIGHT TO COUNSEL.

---

[1] The State agrees that the judgment of conviction requires amendment to reflect defendant was convicted of second-degree conspiracy, not first-degree. Accordingly, we do not address that issue.

I.

Defendant contends that the trial court erred in responding to the jury's question because the judge's response allowed them to convict defendant of conspiracy without addressing any shared purpose to commit robbery. There can be no doubt that appropriate jury charges are essential to a fair trial. State v. Baum, 224 N.J. 147, 158-59 (2016). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." Id. at 159 (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

Defendant did not object at trial, thus we consider the point applying the plain error standard. See R. 2:10-2. Defendant must demonstrate the claimed error was "clearly capable of producing an unjust result." Ibid. In the context of a jury charge, plain error is a "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)). In order to determine whether the error affected defendant's substantial rights and was sufficiently grievous for us to

reverse a conviction, the jury instructions will be considered as a whole.  State v. Brown, 190 N.J. 144, 160 (2007).  Where, as in this case, there was no objection to the charge, "there is a presumption that [a] charge was not [in] error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012) (citing State v. Macon, 57 N.J. 325, 334-34 (1971)).

The basis for defendant's argument is the fact that the jury acquitted defendant of the robbery charge.  But the absence of direct proofs of an agreement between defendant and his co-conspirator does not mean that their conduct did not provide overwhelming circumstantial evidence of a shared purpose.  Neither does the jury's not guilty verdict on the robbery count, which named only Martinez as the victim, somehow establish a failure to find a shared purpose.

Defendant and his co-conspirator walked into the McDonald's together, both carrying weapons, or what the victims had reason to believe were weapons. It was not until Exume said the weapon defendant was carrying was not real that defendant reversed course.  He and the other man were outnumbered.

The judge's conspiracy instruction, which he gave orally and in writing, tracks the model jury charge.  It states that a person can be convicted of conspiracy only if

A-2857-17T4

with the purpose of promoting or facilitating its commission [he]: (1) [a]grees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt . . . to commit such crime; or (2) [a]grees to aid such other person or persons in the planning or commission of such crime or of an attempt . . . to commit such crime.

[Model Jury Charges (Criminal), "Conspiracy (N.J.S.A. 2C:5-2)" (rev. Apr. 12, 2010).]

The judge told the jury that defendant must have agreed with his co-conspirator and that his purpose must have been "to promote or facilitate the commission of the crime of robbery." He defined purpose.

Thus there is neither a basis in the facts or the record for the jury to have been mistaken, nor any indication they ignored the mental state required to prove the offense. Defendant's co-conspirator relieved the employees of their belongings in the room which defendant, while holding a "shotgun," had just walked through headed towards Martinez's office and the cash receipts. Nothing in the record suggests defendant acted with a purpose other than to rob the restaurant and those inside jointly with the other masked man. The judge's charge explained the required state of mind. The circumstances supported a finding of a shared purpose. Therefore, the instruction did not possess a clear capacity to bring about an unjust result.

II.

10

In his pro se brief, defendant argues that the court's failure to permit him to represent himself was reversible error. As a threshold matter, we note that it is not so clear that defendant actually wanted to represent himself. He wanted to represent himself with a public defender sitting at his side as a guide. That is more than just stand-by counsel.

Certainly, a defendant in a criminal matter has the right to counsel under the Sixth Amendment to the United States Constitution and Article 1 Paragraph 10 of the New Jersey State Constitution. Within that Sixth Amendment right to counsel is the right a defendant has to dispense with counsel's assistance and represent himself. Faretta v. California, 422 U.S. 806, 836 (1975).

Although we question whether this was an unequivocal request for self-representation, the trial judge engaged in the inquiry outlined in State v. Crisafi, 128 N.J. 499, 510-12 (1992). The judge explained to defendant the nature of the charges, possible defenses, the range of punishment, the risks that come with self-representation, the requirement that defendant abide by rules of the court, and the inadvisability of proceeding on a self-represented basis. State v. Figueroa, 186 N.J. 589, 593 (2006). In State v. Reddish, 181 N.J. 553, 593-94 (2004), the Court expanded the inquiry to include the practical consequences that might hamper a defense when a defendant is allowed to proceed pro se.

11

There is no doubt that a defendant who represents himself does so to his "likely detriment." Id. at 580. The Court has said "that a defendant who represents himself 'relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.'" Ibid. (citing Faretta, 422 U.S. at 835). But because it is the defendant who bears the consequences of a conviction, it is only the defendant who should decide whether or not self-representation is a particular advantage in that case. Ibid.

The judge's exploration of defendant's ability to represent himself focused narrowly on his technical knowledge, which is not dispositive of a knowing, intelligent, and voluntary waiver of the right to counsel. See Faretta, 422 U.S. at 836. In this case, however, had defendant been convicted of the first-degree robbery, the sentencing consequences would have been a life sentence imposed consecutive to a sentence for robbery defendant was already serving. Defendant was unaware of that sentencing consequence. Nor did he know the actual charges that were pending against him, including conspiracy, would have been a much more difficult charge for him to defend, given the circumstances of the case.

The judge's inquiry adequately elicited two key pieces of information that warranted denial of the motion. Despite the fact the motion was heard just three

days before trial, defendant did not know the charges he faced or the fact that, if convicted, he would be serving a life sentence consecutive to a sentence he was already serving. Thus, the judge's failure to allow defendant to represent himself was not error because defendant was not making a knowing and intelligent waiver.

Affirmed as to the conviction. Remanded to correct the JOC. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2857-17T4