**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5800-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

HERIC N. MALAVE, a/k/a
NELSON HERIC MALAVE,
CARLOS FIELDS, and
ERIC MALAVE,

      Defendant-Appellant.

_____

Argued November 20, 2019 – Decided April 27, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-10-1390.

Remi Lee Spencer argued the cause for appellant (Spencer & Associates, attorneys; Remi Lee Spencer, of counsel and on the briefs).

Jaimee M. Chasmer, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Dennis Calo, Acting Bergen County

Prosecutor, attorney; Jaimee M. Chasmer, of counsel and on the brief).

PER CURIAM

Following a bifurcated jury trial, defendant was convicted of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count one); fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2) (count three); third-degree resisting arrest by force, N.J.S.A. 2C:29-2(a)(3)(a) (count four); third-degree aggravated assault on a police officer, N.J.S.A. 2C:12-1(b)(5)(a) (count five); third-degree possession of ethylone, a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1) (count seven); first-degree unlawful possession of a weapon by a person with a prior robbery conviction, N.J.S.A. 2C:39-5(b) and 2C:39-5(j) (count eight); and second-degree certain persons not to possess weapons, N.J.S.A. 2C:39-7(b) (count nine). Defendant was acquitted of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-5(b) (count two); and third-degree aggravated assault by pointing a firearm at a police officer, N.J.S.A. 2C:12-1(b)(9) (count six).

The convictions stemmed from a police encounter during which defendant fled from police on foot twice, and wrestled with police after they tried to arrest him for driving while intoxicated (DWI). Although the arresting officer testified defendant pointed a handgun at him during the struggle, defendant denied

2

possessing a gun or assaulting the officer, claiming the police used excessive force in effectuating the arrest.  On July 11, 2018, the trial court denied defendant's motion for a new trial.[1]  In a July 20, 2018 judgment of conviction, the court sentenced defendant to an aggregate nineteen-year term, with eight years of parole ineligibility.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT BOTH OF HIS TRIALS.
>
> . . . .
>
> > [A].   DURING   HIS   OPENING STATEMENT AT THE FIRST TRIAL, DEFENDANT'S ATTORNEY IMPROPERLY COMMITTED DEFENDANT TO TESTIFYING.
> >
> > [B]. BY INFORMING THE JURY THAT DEFENDANT HAD A PRIOR CONVICTION FOR SECOND-DEGREE ROBBERY, DEFENSE COUNSEL INEXPLICABLY REVEALED THE NATURE OF THAT PRIOR CONVICTION DESPITE THE TRIAL COURT'S RULING THAT

---

[1]  Defendant's earlier motion for a judgment of acquittal, R. 3:18-1, was also denied.

SANITIZATION WAS WARRANTED IN THIS CASE.  (NOT RAISED BELOW).

[C]. DEFENDANT RECEIVED NO REPRESENTATION AT ALL DURING THE SECOND TRIAL OF THE BIFURCATED PROCEEDINGS (NOT RAISED BELOW).

POINT II

DEFENDANT WAS DEPRIVED OF HIS STATE CONSTITUTIONAL RIGHT TO TESTIFY AT HIS SECOND TRIAL WHEN NEITHER THE COURT NOR DEFENSE COUNSEL INFORMED HIM THAT HE HAD A RIGHT TO TESTIFY AT THAT PROCEEDING.  ([N.J. CONST.], ARTICLE I, PARAGRAPHS 1 AND 10) (NOT RAISED BELOW).

POINT III

THE PROSECUTOR IMPROPERLY FORCED DEFENDANT TO CHARACTERIZE THE STATE TROOPERS AS LYING AND HE VIRTUALLY TESTIFIED ABOUT A MATTER OUTSIDE THE EVIDENCE, THEREBY DENYING DEFENDANT A FAIR TRIAL. ([U.S. CONST.], AMEND. 6; [N.J. CONST.], ARTICLE I, PARAGRAPH 10) (NOT RAISED BELOW).

. . . .

[A]. THE PROSECUTOR REPEATEDLY FORCED DEFENDANT TO CHARACTERIZE THE TROOPERS AS LYING. . . .

[B]. THE PROSECUTOR VIRTUALLY TESTIFIED ABOUT A MATTER OUTSIDE THE EVIDENCE. . . .

. . . .

POINT IV

THE TRIAL WAS SO INFECTED WITH ERROR THAT EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF THE ERRORS DENIED [DEFENDANT] A FAIR TRIAL. ([U.S. CONST.], AMEND. 6; [N.J. CONST.], ARTICLE I, PARAGRAPH 10) . . . .

Based on our review of the record and the applicable legal principles, we affirm.

We glean these facts from the trial record. At approximately 9:30 a.m. on June 20, 2015, while responding to a car fire on the express lanes of westbound Interstate 80 in Teaneck, State Troopers Eric Chaves[2] and Paul Volpe observed a two-car accident, after which both cars pulled over on the shoulder of Interstate 80. When Chaves approached the driver side of one of the vehicles, he "immediately detected an odor of alcohol" and "raw marijuana" "emanating from the vehicle." Chaves asked the driver, later identified as defendant, for his driving credentials, but defendant was unable to produce a driver's license. During the interaction, Chaves noted that defendant was "slurr[ing] [his]

---

[2] Alternate spellings of Chaves appear in the record.

speech," was "sweating," "would [not] make eye contact," and attempted to "drink" from an "unopened" "bottle of liquor on his passenger seat." As a result, Chaves ordered defendant to exit the vehicle in order to perform field sobriety tests.

After defendant failed the field sobriety tests,[3] Chaves determined defendant was impaired and proceeded to place him under arrest for DWI. However, when Chaves attempted to handcuff defendant, defendant ran away. Chaves "gave chase" as defendant ran across three Interstate 80 lanes, hopped over a guardrail, stumbled, and landed "on his stomach" "in a [wooded] area, in between the local lanes." After Chaves "straddl[ed] [defendant's] back," he noticed that defendant was reaching inside "his private area." Fearing that defendant was reaching for a gun, Chaves reached into defendant's pants and felt "the barrel of a gun."

While "trying to control [defendant] . . . with [his] left hand," Chaves attempted to draw his service weapon. However, before he could unholster his weapon, defendant "rolled over" and "pointed" "a small silver handgun" at Chaves. Chaves then engaged in "a tug-of-war" with defendant, after which he

_____

[3] A motor vehicle recording (MVR) was admitted into evidence and played for the jury, showing Chaves approaching defendant's vehicle and defendant performing the field sobriety tests.

6

was able to dislodge the gun from defendant's hand. At that point, Volpe arrived and "tossed the gun" "[b]etween five and ten feet" into "the wooded area."

As defendant "continued to resist," both Chaves and Volpe began striking defendant with their batons in his "torso" and "back," while ordering defendant to place his hands behind his back. Chaves and Volpe each struck defendant "approximately ten to [fifteen]" times. While the troopers continued to administer blows, defendant "push[ed] up . . . onto his feet" and "swung" at Chaves, hitting the "left side of [Chaves's] face." Defendant then "took off" once again on Interstate 80, with Chaves and Volpe chasing him. Volpe caught defendant first, as he attempted to "run[] up a steep embankment," and "deployed OC mace,"[4] spraying defendant "[i]n the face" to subdue him. Once Chaves caught up, he was able to handcuff defendant.

After defendant was handcuffed, he was turned over to other officers who arrived on the scene. A search incident to arrest revealed a small plastic bag on defendant's person, containing a white powder later identified as Ethylone, commonly known as "Molly," a schedule one controlled dangerous substance. One of the responding officers, Trooper Herberto Maldonado, located "a small

---

[4] "'OC spray,' [is] a chemical agent." Mejia v. N.J. Dep't of Corr., 446 N.J. Super. 369, 372 (App. Div. 2016).

silver" "semi-automatic" handgun in the "brush area" and recovered a total of three .25 caliber bullets from the gun, two in the magazine and one inside the chamber. Chaves was transported by ambulance to Hackensack University Medical Center and treated for "a swollen knee" and "lacerations" to his "head [and] hands."

At the first trial, Chaves and Maldonado testified as fact witnesses. The State also produced an expert in firearms identification and operability, who opined that the handgun recovered from the scene "was operable and capable of being discharged." In addition, the parties stipulated that defendant was never issued a firearms permit. For the defense, Volpe was called as a witness but was declared a hostile witness by the court. N.J.R.E. 611(c). His testimony was generally consistent with Chaves's. Defendant also testified on his own behalf. No witnesses were called at the second trial on counts eight and nine.

During his testimony in the first trial, defendant admitted that when Chaves approached his car, the odor of marijuana could be detected because he had been smoking marijuana the previous day. However, he denied that there was any detectible odor of alcohol because he only had a closed "bottle of wine" in his car. Defendant also admitted that after he performed the field sobriety tests, he ran away twice instead of submitting to an arrest. He explained that he

8

ran away because the officers became aggressive and he "was scared." He also ran because he had "a single Molly pill" on his person, and he had a prior robbery conviction. However, defendant adamantly denied possessing the silver handgun recovered from the scene or pointing the gun at Chaves. Defendant denied ever touching or handling the gun, and did not know where the gun came from.[5] Defendant also denied punching, kicking, or biting the officers. He stated that when the officers caught up to him, although he yelled that he was "not resisting," the officers hit him excessively, as a result of which he suffered injuries.

In Point I, defendant argues he was denied effective assistance of counsel by his two private trial attorneys measured by the standards enunciated in Strickland v. Washington, 466 U.S. 668, 686 (1984) and State v. Fritz, 105 N.J. 42, 58 (1987). According to defendant, at the first trial, his attorney "told the jury during opening remarks that defendant would testify," thus "preclud[ing] him from waiving his right to testify," and "told the jury that he had a prior conviction for second-degree robbery," thus "shatter[ing] the sanitization ruling

---

[5] When specifically asked on cross-examination "how the handgun got there," defendant responded "[t]hat's a question you got to ask the Troopers."

that he had received at the Sands/Brunson[6] hearing." Defendant continues that at the second trial, "neither of his attorneys said a word on his behalf."

"Our courts have expressed a general policy against entertaining ineffective-assistance of counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Castagna, 187 N.J. 293, 313 (2006) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). "However, when the trial itself provides an adequately developed record upon which to evaluate defendant's claims, appellate courts may consider the issue on direct appeal." Ibid. Here, we decline to reach defendant's ineffective assistance of counsel claims without the benefit of a fulsome record developed in a post-conviction relief proceeding in which trial counsel may explain the reasons for their actions. See State v. Wiggins, 291 N.J. Super. 441, 452 (App. Div. 1996) ("The Sixth Amendment contentions can best be presented by way of a petition for post-conviction relief.").

In Point II, defendant argues "[t]he trial court . . . committed reversible error when it failed to ensure that [defendant] knew of his right to testify at the second, separate trial." We disagree.

---

6 State v. Sands, 76 N.J. 127 (1978); State v. Brunson, 132 N.J. 377 (1993).

"Few principles are more fundamental than a criminal defendant's right to testify in his own defense." State v. Lopez, 417 N.J. Super. 34, 39 (App. Div. 2010). In Lopez, we explained that bifurcated trials

> are two separate trials which may, but need not, be conducted before different juries. The second trial is a new trial[;] the defendant is entitled to the presumption of innocence and, as a consequence of that, to an instruction that each and every material fact that makes up the crime, including obviously the fact of possession, must be proven by the State beyond a reasonable doubt. Consequently, a waiver of the right to testify in the [first] trial does not constitute a waiver of the right to testify in a later trial on a separate charge.
>
> [Id. at 40 (first alteration in original) (citations and quotation marks omitted).]

Admittedly, the court failed to voir dire defendant about his right to testify at the second trial, as it had done at the first trial. However, while we have recognized that "'the better practice [is] for a trial court to inquire of counsel whether he or she has advised a defendant . . . of his or her right to testify[,]' [o]r, alternatively, to advise defendant directly," State v. Ball, 381 N.J. Super. 545, 556 (App. Div. 2005) (first and second alterations in original) (quoting State v. Savage, 120 N.J. 594, 631 (1990)), "[w]e have previously held . . . that when a defendant is represented by counsel, the court need not engage in a voir dire on the record to establish defendant's waiver." Ibid. Indeed, we have

expressly acknowledged that the trial court's "[f]ailure to address these issues, . . . is not legal error when defendant, as here, was represented by counsel." State v. Cusumano, 369 N.J. Super. 305, 314 (App. Div. 2004).

Moreover, because defendant was advised of his right to testify at the first trial, the record does not support his claim that he was unaware of his right to testify at the second trial. See State v. Bey, 161 N.J. 233, 271-75 (1999) (rejecting a capital defendant's claim of ineffective assistance of counsel based on his purported unawareness of his right to testify at the penalty-phase trial where the record established that he had been advised of the right during the guilt-phase in two prior murder trials). Further, as defendant acknowledges, the court properly instructed the jury to disregard the prior verdict and consider anew the evidence previously admitted at the first trial. That evidence included defendant's testimony in which he adamantly denied possessing the silver handgun recovered at the scene, the possession of which was an essential element of counts eight and nine. Thus, because defendant's defense to the charges was squarely presented to the jury, any error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967) (holding that, in order to conclude that federal constitutional error is harmless, a court must find that error "harmless beyond a reasonable doubt").

In Point III, defendant argues "the prosecutor engaged in improper conduct" and "deprived [him] of a fair trial" when he "repeatedly forced [defendant] to characterize the State Troopers as liars," and "told the jurors in summation that Troopers do not have extra guns to plant on defendants." We reject defendant's contention that the conduct warrants reversal.

"A prosecutor must 'conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction,' ensuring that at all times his or her 'remarks and actions [are] consistent with his or her duty to ensure that justice is achieved.'" State v. Jackson, 211 N.J. 394, 408 (2012) (alterations in original) (quoting State v. Williams, 113 N.J. 393, 447-48 (1988)). "Whether particular prosecutorial efforts can be tolerated as vigorous advocacy or must be condemned as misconduct is often a difficult determination to make. In every instance, the performance must be evaluated in the context of the entire trial, the issues presented, and the general approaches employed." State v. Negron, 355 N.J. Super. 556, 576 (App. Div. 2002).

"[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive [the] defendant of a fair trial." State v. Timmendequas, 161 N.J. 515, 575 (1999). "To justify

13

reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense." State v. Nelson, 173 N.J. 417, 460 (2002) (alterations in original) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)). Moreover, "a failure to make a timely objection indicates defense counsel's belief that the prosecutor's remarks were not prejudicial at the time they were made," State v. Josephs, 174 N.J. 44, 125 (2002), and "deprives the court of the opportunity to take curative action." Timmendequas, 161 N.J. at 576. Thus, "[g]enerally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." State v. R.B., 183 N.J. 308, 333 (2005) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).

During defendant's direct examination, defense counsel placed the truthfulness of the troopers' testimony in question by pointedly asking defendant whether "the gun was pointing at [Chaves]," to which defendant responded that it was not, and whether defendant even possessed a gun, to which defendant responded that he did not. In response, the following unobjected-to questioning occurred during cross-examination:

> [Prosecutor:] So, when listening to the testimony of these officers who said that they saw the handgun in your possession are . . . you saying that they're being untruthful?

[Defendant:] I [did not] have a handgun.

[Prosecutor:] I'd ask you to please answer the question. When Trooper Chave[s] said that he saw the handgun on your person, he is lying; correct?

[Defendant:] Yes.

[Prosecutor:] And, when Trooper Volpe said he saw the handgun there he's lying as well?

[Defendant:] Yes.

[Prosecutor:] And Trooper Maldonado, when he got the handgun, he's lying as well?

[Defendant:] Yes . . . I don't know.

         . . . .

[Prosecutor:] . . . [T]he testimony you heard today from Trooper Chave[s], that he saw a handgun on your person was a lie.  Is that what [you are] saying?

[Defendant:] Yes.

[Prosecutor:] Also, Trooper Volpe, you're saying that was a lie as well?

[Defendant:] Yes.

[Prosecutor:] In other words their testimony that this handgun seen on your person and then it falling to the ground, that didn't happen?

[Defendant:] I never had the gun.

15

In State v. Bunch, our Supreme Court found objectionable "the following unobjected-to question [posed by the prosecutor] during [the defendant's] cross-examination: 'So basically you want this jury to believe that everything that the officers came in here and testified to is untrue?'" 180 N.J. 534, 549 (2004). The Court "agree[d] with defendant that the assistant prosecutor should not have asked defendant to assess the credibility of another witness." Ibid. See also State v. Frisby, 174 N.J. 583, 594 (2002) (explaining that "the mere assessment of another witness's credibility is prohibited"). Nevertheless, the Court held that "in view of the substantial amount of evidence of defendant's guilt and the trial court's instruction to the jury that it must determine the witnesses' credibility, we conclude that the improper statement was not 'so egregious that it deprived defendant of a fair trial.'" Bunch, 180 N.J. at 549 (quoting State v. Ramseur, 106 N.J. 123, 322 (1987)).

Likewise, here, given the substantial evidence of defendant's guilt and the trial court's instruction to the jury that it must determine the witnesses' credibility, we are satisfied that the improper questioning was not "so egregious that it deprived defendant of a fair trial." Ramseur, 106 N.J. at 322. Indeed, because there was no objection interposed by defense counsel, and defendant was acquitted of possession of a weapon for an unlawful purpose and aggravated

16

assault by pointing a firearm at a police officer, it can hardly be said that the questions prejudiced his right to have the jury fairly evaluate the merits of his defense. See State v. T.C., 347 N.J. Super. 219, 237-38 (App. Div. 2002) (characterizing the prosecutor's cross-examination of defendant, asking "in essence, whether a particular witness was 'lying' when he or she described some action of defendant," as "inappropriate," but finding no reversible error where there was no objection to the questioning and no showing of prejudice to defendant).

Defendant also argues the prosecutor committed prosecutorial misconduct by commenting during summation at the first trial that "[t]roopers conducting a roadside detail do not have a throw away gun that they decide after a suspect being taken into custody for DUI runs . . . to plant . . . on this individual." Defendant asserts "[n]o evidence had been submitted in the trial to support that comment, the prosecutor posed no questions to either of the troopers that would have elicited a response on the subject of a 'throw away gun,'" and the "comment was merely improper testimony by the prosecutor."

"Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Cordero, 438 N.J. Super. 472, 489-90 (App. Div. 2014)

(quoting Frost, 158 N.J. at 82). "[I]n the prosecutor's effort to see that justice is done, the prosecutor 'should not make inaccurate legal or factual assertions during a trial.'" State v. Bradshaw, 195 N.J. 493, 510 (2008) (quoting Frost, 158 N.J. at 85). "Rather, a prosecutor should 'confine [his or her] comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence.'" Ibid. (alteration in original) (quoting State v. Smith, 167 N.J. 158, 178 (2001)).

Here, we agree with defendant that there was no evidence to support the prosecutor's comment that troopers "do not have a throw away gun . . . to plant" on a suspect. However, once again, there was no objection to the prosecutor's comment to indicate that the remark was deemed prejudicial. R.B., 183 N.J. at 333. Moreover, when the prosecutor's brief comment is considered in the context of the evidence presented, defense counsel's forceful attack during summation on the troopers' credibility, see State v. Morais, 359 N.J. Super. 123, 131 (App. Div. 2003) ("Prosecutors are permitted to respond to arguments raised by defense counsel as long as they do not stray beyond the evidence."), and the prosecutor's otherwise proper summation, we are convinced the comment is not "so egregious as to [have] deprive[d] defendant[] of a fair trial," ibid., or "to have been clearly capable of producing an unjust result." R. 2:10-2 ("Any error

18

or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.").

Finally, in Point IV, defendant argues "[a]ssuming arguendo that each of the errors . . . did not alone violate fundamental constitutional rights, in the aggregate these errors denied [defendant] a fair trial under the State and Federal Constitutions." See State v. Jenewicz, 193 N.J. 440, 473 (2008) ("We have recognized in the past that even when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal."). However, because we conclude there were no reversible errors, defendant's cumulative error argument must fail.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5800-17T4